### In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

#### MDL No. 381.

United States District Court, E. D. New York.

Feb. 24, 1982.

Victor J. Yannacone, Jr., Yannacone & Yannacone, Patchogue, N. Y., Schlegel & Trafelet, Ltd., L. Steven Platt, Daniel C. Sullivan, Sullivan Associates, Ltd., Chicago, Ill., Hy Mayerson, Spring City, Pa., David Jaroslawicz, New York City, Newton B. Schwartz, P. C., Benton Musslewhite, Inc., Houston, Tex., Dorothy Thompson, Los Angeles, Cal., W. T. McMillan, W. T. McMillan & Co., associated counsel for Australian plaintiffs, Brisbane, Queensland, Australia, Jerry G. Wieslander, Frank G. Wieslander, Altoona, Iowa, Lewis A. Royal, Samuel Zelden, Des Moines, Iowa, David C. Anson, Deconcini, McDonald, Brammer, Yetwin & Lacy, Tucson, Ariz., Phillip E. Brown, Hoberg, Finger, Brown, Cox & Molliga, San Francisco, Cal., Melvin Block, Brooklyn, N. Y., Marshall A. Bernstein, Bernstein, Bernstein & Harrison, Philadelphia, Pa., Louis B. Merhige, New Orleans, La., Dennis M. O'Malley, Grant & Artesani, Boston, Mass., Leslie Hulnick, Wichita, Kan., Sidney W. Gilreath, Knoxville, Tenn., Stephen J. Cavanaugh, Bellaire, Tex., Robert P. Schuster, Spence, Moriarty & Schuster, Jackson, Wyo., Alton C. Todd, Brown & Todd, Alvin, Tex., Jules B. Olsman, Southfield, Mich., Gerald J. Adler, Crow, Lytle, Gilwee, Donoghue, Adler & Weninger, Sacramento, Cal., Jack E. London, Miami, Fla., David J. Ghilardi, Madison, Wis., William G. Morgan, Denver, Colo., Dante Mattioni, Philadelphia, Pa., Elgin L. Crull, Louisville, Ky., Charles J. Traylor, Grand Junction, Colo., Victor L. Marcello, Talbot, Sotile, Carmouche, Waquespack & Marchand, Donaldsonville, La., Janet T. Phillips, Rodgers, Monsley, Woodbury & Berggreen, Las Vegas, Nev., William D. Nelsch, William A. Cohan, Denver, Colo., William J. Risner, Tucson, Ariz., James L. Witzel, McKelvey, Cottom & Witzel, East Lansing, Mich., Robert I. P. Pasternak, Jane R. Kaplan, Berkeley, Cal., Norton Frickey, Denver, Colo., Robert C. Huntley, Jr., Racine, Huntley & Olson, Pocatello, Idaho, Jacque B. Pucheu, Pucheu & Pucheu, Eunice, La., Jeffrey M. Stopford, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa., Joseph D. Jamail, Jamail & Kolius, Houston, Tex., Leonard W. Schroeter, J. Kathleen Learned, Schroeter, Goldmark & Bender, P. S., Seattle, Wash., Bennett, DiFilippo, Davison, Henfling & Alessi, East Aurora, N. Y., James A. George, George & George, Baton Rouge, La., Robert M. Salzman, Pfeffer, Becker, Gabric & Cerveny, Chicago, Ill., Arden C. McClelland, McClelland Law Offices, Missoula, Mont., Daniel E. Becnel, Jr., Becnel & Faucheux, Reserve, La., Don S. Willner, Willner, Ben-

nett, Bobbitt & Hartman, Portland, Or., Robert A. Taylor, Jr., Ashcraft & Gerel, Washington, D. C., John J. Lowrey, Chicago, Ill., Donald H. Dawson, Harvey, Kruse & Westen, P. C., Detroit, Mich., Jonathan N. Garver, Cleveland, Ohio, Dennis B. Francis, Gillenwater, Whelchel & Nichol, Knoxville, Tenn., Russell L. Cook, Jr., Fisher, Roch & Gallagher, Houston, Tex., Irwin E. Schermer, Schermer, Schwappach, Borkon & Ramstead, Minneapolis, Minn., David D. Noel, Jenkins & Jenkins, Knoxville, Tenn., Thomas E. Allen, Curtis, Crossen, Hensley, Allen, Curtis & Altman, St. Louis, Mo., Kenneth N. Molberg, Dallas, Tex., Phil M. Cartmell, Jr., Gage & Tucker, Kansas City, Mo., Wayne B. Harbarger, III, Littlefield, McDermand & Harbarger, Sacramento, Cal., William T. Jorden, Erie, Pa., Devine & Morris, Atlanta, Ga., Byron N. Fox and Gary K. Hoffman, Brown & Fox, Kansas City, Mo., Ernest L. Caulfield, New Orleans, La., Thomas E. Connolly, Schneider, Reilly, Zabin, Connolly & Costello, P. C., Boston, Mass., Gary W. Anderson, Erler, Taylor & Anderson, Louisville, Ky., John F. Vecchio, Houston, Tex., Caenen & Niederhauser, Mission, Kan., John T. Golden, Robert F. Stein and William J. Stradley, Stradley, Barnett & Stein, Houston, Tex., Douglass D. Hearne & Associates, Austin, Tex., Lawrence M. Ludwig and Kirby G. Upright, Scranton, Pa., Epstein & Kesselman, Chicago, Ill., Brenda S. Jenkins, Werner & Rusk, Houston, Tex., Richard R. Ravreby, Ravreby & Connolly, Carlsbad, Cal., Robert A. McNess, III, and Robert W. Knolton, Layton & McNess, P. C., Oak Ridge, Tenn., Henry E. Weil and Ronald S. Canter, Belli, Weil & Jacobs, Rockville, Md., Cletus E. Amlung and J. Michael Poole, Louisville, Ky., Synchef & Synchef, Chicago, Ill., Percy J. Blount, Saul, Blount & Martin, P. C., Augusta, Ga., Richard C. McLean, Denver, Colo., Carlton T. Wynn, Hare, Wynn, Newell & Newton, Birmingham, Ala., Owen J. Bradley, New Orleans, La., Elliot E. Brown, Metairie, La., James R. Dawson, Johnston, Thornton, Dawson & Hunter, Shreveport, La., Roger J. Larue, Jr., Metairie, La., William M. Beasley, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, Miss., Avram G.

Adler, Adler, Barish, Levin & Creskoff, Philadelphia, Pa., Ned W. Johnson, Benckenstein, McNicholas, Oxford, Radford, Johnson & Nathan, Beaumont, Tex., Paul D. Rheingold, New York City, Fred D. Shapiro, Shapiro, Turoff & Gisser, Cleveland, Ohio, for plaintiffs.

Leonard L. Rivkin, Rivkin, Leff & Sherman, Garden City, N. Y., for Dow Chemical.

Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N. Y., Baker & McKenzie, Chicago, Ill., for Thompson-Hayward.

Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, for Diamond Shamrock.

Townley & Updike, New York City, for Monsanto.

Bud G. Holman and William Krohley, Kelley, Drye & Warren, New York City, for Hercules, Inc.

Joan Bernott, Dept. of Justice, Washington, D. C., for third-party defendant U. S.

Roy L. Reardon, James P. Barrett and Michael V. Corrigan, Simpson, Thacher & Bartlett, New York City, for Ansul Co.

Armand E. Capanna, Lewis, Overbeck & Furman, Chicago, Ill., for Riverdale Chemical Co.

Lawrence D. Lenihan, Thomas B. Kinzler and Alfred H. Hemingway, Jr., Arthur, Dry & Kalish, P. C., New York City, for Uniroyal.

Les J. Weinstein, McKenna & Fitting, New York City, for Occidental Petroleum Co.

William H. Sanders, William A. Lynch and Paul G. Lane, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for N. A. Phillips.

John M. Fitzpatrick, Dilworth, Paxson, Kalish, Lelvy & Kauffman, Philadelphia, Pa., for Hooker Chemical Co.

GEORGE C. PRATT, District Judge.

This memorandum and order addresses the following subjects:

I. Dow's Motion for Reargument.

II. Defendants' Motion for Entry of Final Judgment or Certification.

III. Dow's Motion to Amend its Third Party Complaint Against the Government.

IV. Motions by Defendants Riverdale, Ansul, Hooker & Occidental.

V. Motion by Some Plaintiffs' Counsel for a Steering Committee.

VI. Dow's Motion to Decertify the Class.

VII. Statute of Limitations.

VIII. The Government Contract Defense.

IX. Narrowing Claims.

X. Discovery.

XI. Class Notice.

## I. *Dow's Motion for Reargument.*

■ Dow Chemical Company moves for reargument of that portion of the court's December 29, 1980 order which dismissed defendants' third party complaints against the United States. 506 F.Supp. 762. Much of what Dow argues on this motion has been considered and explicitly rejected by the court's earlier rulings, and the arguments are equally unpersuasive the second time around. Nor is the court persuaded to change its view by the subsequent cases brought to its attention by the parties. *E.g., Broudy v. U. S.,* 661 F.2d 125 (CA9 1981) (independent post-service torts actionable including, in some circumstances, post-discharge failure to warn claim); *Laswell v. Brown,* 524 F.Supp. 847 (W.D.Mo.1981); *Hinkie v. U. S.,* 524 F.Supp. 277 (E.D.Pa. 1981). *Cf. Monaco v. U. S.,* 661 F.2d 129 (CA9 1981); *Jaffee v. U. S.,* 663 F.2d 1226 (CA3 1981); *Lombard v. U. S.,* 530 F.Supp. 918 (D.D.C.1981).

Finally, contrary to defendants' assertions, the court anticipates no unusual difficulty in obtaining discovery from the government as a non-party. The government has unequivocally promised complete cooperation and liberal discovery, and despite some apparent misunderstandings, the government has done nothing to date to cause the court to doubt its willingness and ability to keep that promise. The motion is denied.

## II. *Defendants' Motion for Entry of Final Judgment or Certification.*

■ On December 26, 1980 this court granted the government's motion to dismiss defendants' third party claims. Defendants now move for entry of a final judgment of dismissal of the government pursuant to FRCP 54(b) or, in the alternative, for an order pursuant to 28 U.S.C. § 1292(b) certifying for interlocutory appellate review questions concerning the dismissal of the United States on defendants' third party complaint.

FRCP 54(b) prohibits interlocutory appeals on multiple claims or by multiple parties without court certification, but provides that when more than one claim for relief is presented in an action,

> the court *may* direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

FRCP 54(b).

Such certification rests in the sound discretion of the court:

> The District Court *may*, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay.

*Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (emphasis in original).

Section 1292(b) of 28 U.S.C., the other statute upon which defendants rely in their quest for interlocutory review, provides that:

When a district judge, in making in a civil action an order not otherwise appealable under the section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Both Rule 54(b) and § 1292(b) wisely contemplate that the usual course of events will be a single appeal from a final judgment entered by a district court. This litigation has already given rise to one round of interlocutory appeals pursuant to § 1292(b), which effectively has caused nearly two years of delay. Nearly every issue decided in this massive litigation will impact on numerous parties, and a different resolution of many of the issues could have significant ramifications on other steps in the action. However, the litigation cannot proceed on an issue-appeal, issue-appeal basis; otherwise, it might never end. The wisdom of the general rule—one appeal from a final judgment—is evident here. Later events may obviate the need for an appeal. Even if plaintiffs ultimately prevail, defendants may then on appeal test this court's dismissal of the third party claims and, if successful, pursue their remedies against the government at that time in an appropriate non-jury trial. The court concludes, therefore, that the interests of justice are best served if defendants' appeals from dismissal of their claims against the government are resolved later.

Accordingly, defendants' motions for entry of final judgment of dismissal of the government pursuant to FRCP 54(b), and defendants' motion for an order pursuant to 28 U.S.C. § 1292(b) certifying aspects of this court's December 26, 1980 order to the Court of Appeals for interlocutory review are denied.

## III. Dow's Motion to Amend its Third Party Complaint Against the Government.

■ Defendant Dow moves to amend its previously dismissed third party complaint against the government, pointing out that certain governmental acts may, because of their nature or the circumstances of their timing, circumvent the bar of *Feres* and *Stencel Aero* with respect to defendants' third party claims against the government. However, at this stage of the litigation, when the court is being bombarded with numerous multidistrict actions containing virtually every possible theory of recovery, it is difficult to determine which, if any, of the alleged governmental acts might give rise to a valid third party action against the government.

That such claims may be validly asserted at some time in the future does not alter the thrust of the court's decision dismissing defendants' third party claims against the government. Those separate claims have nothing to do with the common issues at this stage of the MDL litigation, and they can be fully and fairly considered at a later time. Moreover, Dow is not prejudiced by the government's absence at this stage, because it may assert such claims against the government even after judgment against Dow in the plaintiffs' actions. If these various individual theories of recovery are to have impact on this litigation at all, that impact would come at a time when the causation issues are being considered. Furthermore, as noted previously, discovery from the government with respect to Phase I issues will be unaffected by disposition of this motion.

For these reasons, defendant Dow's motion to amend its third party complaint against the government is denied, without prejudice to possible renewal after the Phase I issues have been tried and decided, and after the full range of theories asserted by plaintiffs are better known.

## IV. Motions by Defendants Riverdale, Ansul, Hooker and Occidental.

■ Defendants Riverdale, Ansul, Hooker, and Occidental have all moved to dismiss all claims against them on the ground that they never designed, manufactured or mar-

keted Agent Orange or any phenoxy herbicide for use in southeast Asia. Nothing has been presented to the court to establish that any of these defendants did in fact supply Agent Orange or other herbicides to the government. Since its motion was filed, defendant Riverdale has indicated its desire to withdraw the motion without prejudice, apparently preferring to proceed by way of stipulations with individual plaintiffs that preserve the plaintiffs' rights to later assert claims should evidence surface to establish that Riverdale produced Agent Orange or other phenoxy herbicides for the government's use in southeast Asia.

With specific reference to Hooker and Occidental, some plaintiffs have argued that those companies produced some of the component chemicals used by other defendants in manufacturing Agent Orange, and that until it can be determined which materials or processes, if any, actually caused the harm complained of by plaintiffs, it would be inappropriate to grant summary judgment to the manufacturer of a component chemical.

At this stage of these actions no practical purpose is served by having these defendants remain parties on the possibility that later acquired knowledge may establish a theory of liability against them. When and if plausible bases for such liability can be established, there will be ample opportunity to bring in these or other defendants to participate in the proceedings. On the other hand, the defendants may wish to participate now on the possibility that at a later time they may be brought in.

Accordingly, the motions by Ansul, Hooker, and Occidental to dismiss all of the plaintiffs' complaints against them are granted as to those defendants who, within 20 days of the date of this order, file with the court a consent to renewal of the action against them by any present or future Agent Orange plaintiffs or class members in the event that evidence should surface during this litigation that the defendant did manufacture or sell Agent Orange or some other herbicide to the government, directly or indirectly, for use in southeast Asia during the period of the Vietnam war, and agreeing not to raise any statute of limitations defense that includes any time that passes between the date of commencement of the first of these Agent Orange actions and any possible renewal of plaintiffs' claims against it. The waiver of the statute of limitations must also include any other claim against the defendants' products which might reasonably be involved in this litigation.

Any defendant who does not file the consent and waiver will remain a party defendant in the action. Upon the filing of such a consent and waiver all of these actions are dismissed against the filing defendant.

## V. *Motion by Some Plaintiffs' Counsel for Steering Committee.*

■ Attorneys for some plaintiffs move to have the court establish a steering committee composed of representatives of veterans' groups and a combination of attorneys from the different "camps" that seem to have arisen among plaintiffs' counsel. The court has previously designated Yannacone & Associates as lead counsel for plaintiffs in the many separate actions filed in this MDL litigation. In pretrial order no. 26, 506 F.Supp. 762, 763 (EDNY 1980), the court granted plaintiffs' application to proceed as a class action and named Yannacone & Associates as counsel for the class. At that time, the court described Yannacone & Associates as a consortium of lawyers with "the expertise and desire to prosecute this demanding action properly", 506 F.Supp. 788 at n.32, and "capable counsel * * * willing to undertake the considerable commitment of time, energy and money necessary for the vigorous prosecution of the claims here asserted." 506 F.Supp. at 788. The court's view remains unchanged, particularly in the light of their declared willingness and desire to cooperate. with, and consider all ideas and suggestions submitted by attorneys for separate plaintiffs. Yannacone & Associates are to be counsel for the plaintiff class, as well as lead counsel for all plaintiffs, and there is no evidence at this time that a formal steering committee

or any other form of court-dictated combined leadership would be in any manner preferable.

Accordingly, the motion of certain plaintiffs' counsel to establish a steering committee is denied.

## VI. *Dow's Motion to Decertify the Class.*

■ On December 17, 1981, Dow moved orally to decertify the class which the court found in pretrial order no. 26 to be an appropriate and proper device for handling at least some phases of this litigation. Plaintiffs oppose the motion for decertification. The motion is denied.

## VII. *Statute of Limitations.*

■ As they now stand, these actions must be viewed as having been commenced as separate actions brought by separate plaintiffs in separate districts under diversity jurisdiction. There are potentially a large number of different statutes of limitations and related accrual and tolling rules which may apply.

At an earlier time in this litigation the court considered ruling as quickly as possible on statute of limitations issues. Further reflection has convinced the court, however, that little is to be gained by early decision of statute of limitations problems, and deferral of those decisions might well avoid many otherwise difficult and perplexing problems. It seems clear that at least some of the actions are viable even under the most restrictive interpretations of the various statutes of limitations. Consequently, this litigation must run its course as to some plaintiffs whatever disposition were now to be made of the statute of limitations issues.

As a class action, this litigation presents the statute of limitations issues in a different light. By pretrial order # 4 (Aug. 14, 1979) (following oral order on July 18, 1979) this court tolled the running of the statute of limitations against all class members pending decision on the class action motion. While the basic decision to certify a class was made on December 29, 1980, 506 F.Supp. at 787–92, the court has not yet formally certified the class and authorized notice to be disseminated. A formal order to that effect will soon be entered. Even at this stage, however, the class is being certified only for limited purposes, and it is not clear whether the remainder of the action can be treated as a class action, or whether at a future time the class must be decertified and the claims of the class members continued as separate actions. In view of this uncertainty, the court continues its order tolling the statutes of limitations for as long as the class action may be pending, or until further order of the court.

## VIII. *The Government Contract Defense.*

### A. *History of the Litigation with Respect to the Government Contract Defense.*

Defendants in 1980 moved for summary judgment based on what has been termed the "government contract defense". They argued that liability may not be imposed upon them for injuries arising out of the government's use of Agent Orange, because defendants had manufactured Agent Orange under contract with the United States government and in strict compliance with its specifications.

By memorandum and order dated December 26, 1980, the court recognized that "a government contract defense exists and has possible application to the facts at bar", but denied summary judgment on the ground that application of the government contract defense presented triable issues of fact. 506 F.Supp. at 796. The court further established a plan for the management of this litigation with the issues presented by the government contract defense to be tried as the first of several "phased" trials. 506 F.Supp. at 782–86.

In order to better focus the issues, the court ordered the parties to submit briefs and proposed special verdicts setting forth the parties' positions as to the elements constituting the government contract defense. Having carefully considered the written submissions as well as the oral arguments of counsel, the court is prepared to decide how the elements of the government

contract defense will apply in the context of this litigation as it now appears at this relatively early stage.

### B. *The Parties' Positions.*

Defendants contend that they are entitled to judgment dismissing the complaints if on the Phase I trial it is determined:

1. That the United States military established the specifications for "Agent Orange"; and

2. That the "Agent Orange" manufactured by the defendants met the specifications in all material respects.

Plaintiffs [1] contend that in order to succeed on the government contract defense the defendants must establish:

1. That they had no role directly or indirectly in preparing the specifications for "Agent Orange";

2. That the expertise of the government was sufficient to enable it to exercise independent judgment with respect to the dioxin contamination of "Agent Orange";

3. If the specifications were, to the experts in defendants' employ, either dangerous or deficient, then that defendants brought these dangers or deficiencies to the attention of the government and that the government chose to require manufacture of the defective product;

4. That defendants exercised no discretion in choosing the "Agent Orange" manufacturing process and dioxin contamination level in the delivered product;

5. That defendants in fact complied with the spirit and intent of the specifications; and

6. That defendants were guilty of no wrong-doing in the performance of their contracts with the government.

### C. *Statement of Government Contract Defense.*

■ Courts should not require suppliers of ordnance to question the military's needs or specifications for weapons during wartime. Whether to use a particular weapon that creates a risk to third parties, whether the risk could be avoided at additional cost, whether the weapon could be made safer if a longer manufacturing time were allowed, indeed, whether the weapon involves any risk at all, are all proper concerns of the military which selects, buys and uses the weapon. But they are not sources of liability which should be thrust upon a supplier, nor are they decisions that are properly made by a court.

1. Counsel for one group of plaintiffs have submitted a separate memorandum arguing that there can be no government contract defense to a claim grounded in strict products liability and, further, that the only realistic government contract defense is one which negates any duty owed by defendants to plaintiffs under either a negligence theory or a strict products liability theory. Under this view, the Phase I trial of the government contract defense would simply be a trial of certain liability issues, but with the burden of proof reversed. As indicated in the text, this court rejects that view of the defense. Similarly, the court does not accept the view that the government contract defense cannot apply in a strict products liability case. It is true that the policies giving rise to strict products liability reflect considerations different from those involving a negligence approach to liability. Nevertheless, the policies which require a government contract defense, particularly in the context of manufacturing weapons for the military, override those considerations which might otherwise impose liability on a manufacturer whether on a negligence or strict products liability theory. The purpose of a government contract defense in the context of this case is to permit the government to wage war in whatever manner the government deems advisable, and to do so with the support of suppliers of military weapons. Considerations of cost, time of production, risks to participants, risks to third parties, and any other factors that might weigh on the decisions of whether, when, and how to use a particular weapon, are uniquely questions for the military and should be exempt from review by civilian courts. As indicated in the text, considerations of public policy require that a supplier of weapons to the government has two duties: (1) to comply with the specifications imposed by the government, and (2) to see that the government is apprised of any risks or hazards related to the weapon of which the supplier has knowledge. Given those two conditions, a supplier to the government under specifications established by the government, is exempt from liability whether the theory of the claim be negligence or strict products liability.

■ Public policy does require, however, that the military's decisions on those vital questions should at least be made on the basis of the readily available information. A supplier should not be insulated from liability for damages that would never have occurred if the military had been apprised of hazards known to the supplier. A supplier, therefore, has a duty to inform the military of known risks attendant to a particular weapon that it supplies, so as to provide the military with at least an opportunity fairly to balance the weapon's risks and benefits.

■ This principle would not impose upon a supplier any duty of testing that was not included in the specifications. It merely would require the supplier to share with the military the extent of a supplier's knowledge about the hazards of the product being purchased. If this knowledge level between supplier and the military is at least in balance, the supplier is then shielded by the government contract defense from liability for damages resulting from use of a product supplied pursuant to and in compliance with government contract specifications.

■ In short, the court has considered carefully the arguments of the parties and the many cases submitted in support thereof,[2] and concludes that a defendant in this case will be entitled to judgment dismissing all claims against it based on that defendant's having supplied "Agent Orange" to the government pursuant to a contract, if the defendant proves:

1. That the government established the specifications for "Agent Orange";

2. That the "Agent Orange" manufactured by the defendant met the government's specifications in all material respects; and

3. That the government knew as much as or more than the defendant about the hazards to people that accompanied use of "Agent Orange".

These three elements, if established at the Phase I trial, will insulate a defendant from liability based on its having supplied the "Agent Orange" pursuant to the government contract.

The above statement of the government contract defense as it will apply in this case requires some elaboration.

1. *"Judgment Dismissing All Claims"*.

■ The government contract defense is an affirmative defense which, if successful, is intended to defeat liability that otherwise might exist. If established, it would be a bar to the claims asserted in this lawsuit with respect to all matters that fall within the scope of the defense. In broadest terms, plaintiffs' claims against defendants are that for having manufactured and sold to the government "Agent Orange" for use in southeast Asia, defendants should be held liable under principles of negligence, strict products liability or warranty. To the ex-

---

2. Among the cases relied on by the parties in support of their arguments are the following: *Green v. ICI America, Inc.*, 362 F.Supp. 1263 (E.D.Tenn.1973); *Littlehale v. E. I. duPont de Nemours & Co.*, 268 F.Supp. 791 (SDNY), aff'd, 380 F.2d 274 (CA2 1966); *Ward v. Humble Oil & Ref'g Co.*, 321 F.2d 775 (CA5 1963); *Montgomery v. Goodyear Tire & Rubber Co.*, 231 F.Supp. 447 (SDNY 1964); *O'Keefe v. Boening Company*, 335 F.Supp. 1104 (SDNY 1971); *Foster v. Day & Zimmerman, Inc.*, 502 F.2d 867 (CA8 1974); *Whitaker v. Harvell Kilgore Corp.*, 418 F.2d 1010 (CA5 1969); *United States v. Pennsylvania Environmental Hearing Board*, 431 F.Supp. 747 (M.D.Pa.1977), aff'd, 584 F.2d 1273 (CA3 1978); *Person v. Cauldwell Wingate Co.*, 176 F.2d 237 (CA2), cert. denied, 338 U.S. 886, 70 S.Ct. 189, 94 L.Ed. 544 (1949); *Ryan v. Feeney & Sheehan Building Co.*, 239 N.Y. 43, 145 N.E. 231 (1924); *Sanner v. Ford Motor Company*, 144 N.J.Super. 1, 364 A.2d 43, 37 (Law Div.1976), aff'd 154 N.J.Super. 407, 381 A.2d 805 (A.D.1977), cert. denied, 75 N.J. 616, 384 A.2d 846 (1978); *Casabianca v. Casabianca*, 104 Misc.2d 348, 428 N.Y.S.2d 400 (S.Ct. Bronx Cty.1980); *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); *North American Aviation v. Hughes*, 247 F.2d 517 (CA9 1957); *Boeing Airplane Company v. Brown*, 291 F.2d 310 (CA9 1961); *Sevits v. McKiernan-Terry Corporation*, 264 F.Supp. 810 (SDNY); *Berg v. Reaction Motors Div.*, 37 N.J. 396, 181 A.2d 487 (1962); *Smith v. Lockheed Propulsion Company*, 247 Cal.App.2d 774, 56 Cal.Rptr. 128 (1967); *Challoner v. Day and Zimmermann, Inc.*, 512 F.2d 77 (CA5 1975).

tent it is successful on this government contract defense, a defendant would be entitled to dismissal of all such claims.

### 2. "Agent Orange".

As used in this discussion, the term "Agent Orange" denotes not only the specific product designated Agent Orange, but also any other herbicide used by the United States military in southeast Asia during the relevant period. As discussed in later portions of this decision, plaintiffs will be required to identify the particular herbicides complained of.

### 3. "Pursuant to a Contract With the Government".

The court is considering the government contract defense at this time only with respect to the Phase I trial which is limited to those defendants claiming to have supplied "Agent Orange" under a contract with the government. The court does not now consider, nor does it express any opinion on, whether the government contract defense may have application to (a) "Agent Orange" manufactured by a defendant but acquired by the government from a third party, or (b) what, if any, protection a particular defendant's subcontractor or supplier of component materials may have if that defendant successfully proves the government contract defense.

Since the defense applies to a product only when it was supplied by a defendant pursuant to a government contract, in order to succeed the defendant must establish that it did have one or more contracts with the government to supply "Agent Orange". Moreover, the defense will extend to, and protect the defendant against liability for, only those particular shipments that were made under the contract with the government.

### 4. "If the Defendant Proves".

As an affirmative defense to liability that the law might otherwise impose, the government contract defense carries with it the burden of proof. This means that a defendant who claims protection from the government contract defense must prove each of its elements. A defendant's failure to establish the defense will not, of course, mean that the defendant necessarily will be held liable. As to that defendant the litigation then would proceed to other issues such as negligence, strict liability, general causation, specific causation, and damages.

### 5. "Government Established the Specifications".

Since one of the premises supporting the government contract defense is that liability should not be imposed upon a contractor who merely supplied the government with a weapon it required, one of the elements of the defense is that the product in issue be one for which the government established the design and specific characteristics.

Plaintiffs argue that defendants must show that they had neither direct nor indirect responsibility for formulating the specifications which eventually became part of the contract. According to plaintiffs, any role by a defendant in preparation of the specifications, whether it be advice to the government about the product design, or even touting of the product to the government, should defeat the defense. They also argue that as part of this element a defendant has the burden to establish that the government had sufficient expertise to exercise independent judgment with respect to the dioxin contamination of "Agent Orange".

The court rejects these factors urged by plaintiffs as essential to the government contract defense. While evidence of each may be relevant in establishing the relative degrees of knowledge as between the government and the defendants, all that is necessary on this element of the defense is for defendant to prove that the product it supplied was a particular product specified by the government. If it should appear that the contract set forth merely a "performance specification", as opposed to a specified product, then the government contract defense would be far more restricted than as described here.

6. *The Defendant's Product "Met the Government's Specifications in all Material Respects".*

 This element is relatively straight-forward. If still at issue by the time of trial, it will require a comparison of the government's specifications for the herbicide with the characteristics and quality of the product supplied. If the specifications called for particular methods of manufacture, those aspects of performance would have to be explored as well. Failure of a defendant to conform to the specifications would defeat the defense only if the discrepancy between specifications and product was a material one in the context of this action.

Plaintiffs also urge that there can be no government contract defense if defendants exercised discretion in choosing the manufacturing process and the dioxin contamination level in the delivered product. They argue that the type of manufacturing process used affected the level of dioxin contamination and that by exercising discretion as to the process the defendants controlled the extent of the dioxin hazard. If these facts are true and if defendants knew that greater dioxin contamination caused greater hazard, then under the court's formulation of the elements, defendants could succeed on the defense only by establishing that the government had knowledge equal to theirs and that even with that knowledge the government imposed no requirement or restriction with respect to the manufacturing process or the level of dioxin contamination. Obviously, if requirements were established by the government and a defendant failed to observe them, then that defendant would not have complied with the specifications and would lose its government contract defense. But if a defendant can establish that there were no such requirements and that the government knew as much (or as little) about the hazards attendant upon the manufacturing process and dioxin contamination as did the defendant, then the defense could be sustained.

7. *Relative Knowledge of Hazards.*

 Perhaps the central question for the Phase I trial is whether the government knew as much as the defendants did about the hazardous aspects of this product. If the government knew as much as the defendants and, knowing of the hazards, decided to use "Agent Orange" as a weapon of war, defendants would be protected from liability. It is only if defendants concealed or failed to disclose to the government information about hazards of which the government was ignorant that defendants fail to gain the protection of the government contract defense in the context of these actions.

Defendants argue vigorously that any issue relating to liability, causation or damages may not be involved with the government contract defense; but there is no rule of law that makes particular evidence or particular facts relevant solely to a single issue in a case. A defendant can be insulated from liability by the government contract defense only if in addition to showing compliance with specifications established by the government, it can show that it was not aware of hazard-causing deficiencies in the specifications as to the design or method of manufacture, deficiencies which, if known to the government, might have altered the government's decisions as to whether and how to use the herbicide.

Defendants also argue that questions such as what defendants knew or should have known, foreseeability, the state of the art, or the absence of a "glaring" or "patent" defect in the specifications are irrelevant to the government contract defense. The court rejects this view to the extent indicated above. If the government knew as much as a defendant about the hazards and risks related to the use of "Agent Orange", then that defendant would be entitled to protection from liability if it produced the product pursuant to and in compliance with the contract specifications. On the other hand, if a defendant was aware of hazards that might reasonably have affected the government's decision about the use of "Agent Orange", and if that defendant

failed to disclose those hazards to the government, then the government contract defense fails as to that defendant, and at a later stage of the litigation plaintiffs will be entitled to establish liability on any proper theory of liability.

### IX. *Narrowing Claims.*

The future course of this litigation in general, and effective preparation and presentation of the Phase I trial in particular, require that some of the issues be narrowed as soon as possible. To that end:

### 1. *Diversity Jurisdiction.*

By April 9, 1982 each defendant shall serve and file, under docket no. MDL–381, a verified statement of its (a) state of incorporation and (b) principal place of business.

### 2. *"Agent Orange".*

In the court's discussion of the government contract defense the term "Agent Orange" was frequently used in quotation marks as a general term for all herbicides that may be in issue in this action. In order to proceed further, however, it appears necessary to specifically identify the particular products that are to be the subject of plaintiff's claims in this litigation. At this stage it is clear that plaintiffs are at least challenging Agent Orange. Plaintiffs may also wish to challenge other specific herbicides. By March 12, 1982 plaintiffs' attorneys shall serve and file a statement identifying all herbicides which plaintiffs claim are subjects of this litigation, including the herbicides' correct chemical names. All complaints will be deemed amended to allege the herbicides thus specified, and absent unusual circumstances plaintiffs will hereafter be limited to the herbicides specified.

### 3. *Government Contracts.*

In order to claim the government contract defense, a defendant shall, by April 9, 1982, serve and file a verified statement affirming or denying with respect to Agent Orange and each other herbicide claimed by plaintiffs in response to ¶ 2 above, that it supplied to the government under contract, directly or indirectly, some of the product. Any defendant who thus claims to have supplied a herbicide under contract with the government shall by April 22, 1982 serve on Yannacone & Associates a complete copy of the contract pursuant to which the herbicide was supplied, and shall serve and file a statement of the appropriate quantities supplied and the dates they were supplied. A defendant shall be deemed to have waived the government contract defense as to any herbicide which it denies having supplied, or as to which it fails to serve a copy of the applicable government contract, or as to any quantities not described.

### 4. *Joint Defense.*

In presenting the government contract defense described in Part VIII of this decision, two or more defendants may elect to proceed jointly on a stipulation that the defense will apply to all or none. Absent such a stipulation by a defendant who claims the government contract defense, that defense will have to be determined separately for that defendant.

Accordingly, any defendants who want to proceed jointly on the government contract defense shall file their stipulation by April 22, 1982.

### X. *Discovery.*

Thus far, discovery on Phase I issues has proceeded informally and without court direction. The court understands that until there was a further definition of the elements of the government contract defense, intensive discovery was not appropriate. Now, however, such intensive discovery is not only appropriate but required. By March 12, 1982, counsel shall submit to the court specific proposals and a proposed timetable for the discovery required to prepare for the Phase I trial, and for any other discovery that may be appropriate at this time. A conference will be held on March 18, 1982 at 9:30 a. m. Counsel should attend prepared to spend as much time as necessary to resolve all preliminary discovery disputes. All previously submitted motions addressed to Phase I discovery is-

sues are deemed denied without prejudice to reconsideration in light of any decisions and problems that may develop in the course of or as a result of the March 18 discovery conference. The conference will be off the record and in chambers. Its results shall be embodied in a formal pre-trial order.

XI. *Class Notice.*

The court is in the process of finalizing the content of the formal notice to be given to class members, and a formal order specifying the notice will be entered shortly. More troublesome than the form of notice, however, is the manner in which the formal notice shall be disseminated.

The court is confused by counsel for the government's assertion that the government is unable to assist in notifying veterans and their families of the pending class suit, and the court will discuss this issue with counsel at the conference on March 18, 1982.

SO ORDERED.