**In re ALL MAINE ASBESTOS LITIGATION.**

United States District Court,
D. Maine.

Nov. 22, 1983.

G. William Higbee, Brunswick, Maine, Thomas W. Henderson, Thomas White, Pittsburgh, Pa., Mark F. Sullivan, William A. Mulvey, Jr., James G. Noucas, Jr., Portsmouth, N.H., Ronald L. Motley, Blatt & Fales, Barnwell, S.C., Lawrence C. Winger, Herbert Bennett, Portland, Maine, Melvin I. Friedman, Stanley J. Levy, Ivan B. Rubin, Patricia Martinelli, Kriendler & Kriendler, New York City, Dan W. Thornhill, McEachern & Thornhill, Kittery, Maine, Ira A. Levy, P.C., Michael H. Smoller, Newark, N.J., Michael P. Thornton, Thornton & Early, Boston, Mass., for Asbestos plaintiffs.

Robert E. Hirshon, Portland, Maine, for Amatex Corp.

Peter L. Murray, Ellyn Ballou, Thomas Newman, Portland, Maine, for Amchem Products, Inc.

Harrison L. Richardson, Jeffrey Thaler, Thomas Getchell, Portland, Maine, for Armstrong World.

John R. Linnell, Robert Mullen, Auburn, Maine, for Eagle-Picher Industries.

**1376**

U. Charles Remmel, Graydon G. Stevens, Portland, Maine, for Fibreboard Corp.

Jack H. Simmons, Lewiston, Maine, for Forty-Eight Insulations.

Roy Thompson, James M. Bowie, M. Roberts Hunt, Glenn Robinson, Portland, Maine, for Celotex Corp.

Caroline Glassman, C. Alan Beagle, Martin J. Ridge, Portland, Maine, for Combustion Engineering.

Roland Beaudoin, Sarah A. Thornton, Portland, Maine, for Cummings Insulation and Claremont Co., Inc.

Jotham D. Pierce, Jr., Ernest J. Babcock, Louise Thomas, Portland, Maine, for G.A.F. Corp.

Joanne F. Cole, W. John Amerling, George F. Burns, Portland, Maine, for Garlock, Inc.

Phillip D. Buckley, George Terry, Bangor, Maine, for Johns-Manville.

Douglas Myers, Kurtz & Myers, South Paris, Maine, for Congoleum.

Thomas F. Monaghan, Kevin G. Libby, Portland, Maine, for Keene Corp.

John J. Flaherty, Christopher D. Nyhan, Jonathan S. Piper, Portland, Maine, for Nicolet, Inc.

Nicholas S. Nadzo, Michael A. Nelson, John Montgomery, Portland, Maine, for Owens-Corning Fiberglas.

Peter J. Rubin, Linda Monica, Portland, Maine, for Owens-Illinois.

Thomas R. McNaboe, Mark G. Furey, Portland, Maine, for Raybestos-Manhattan.

Charles H. Abbott, Steven Wright, Lewiston, Maine, and Vernon I. Arey, Waterville, Maine, for Southern Textile Co.

Randall E. Smith, Saco, Maine, for J.P. Stevens & Co.

John A. Mitchell, James G. Goggin, Portland, Maine, for Pittsburgh Corning.

Charles H. Abbott, Steven Wright, Lewiston, Maine, and Vernon I. Arey, Waterville, Maine, for H.K. Porter Co.

Robert F. Hanson, Mark G. Lavoie, Portland, Maine, for Bath Iron Works Corp.

Richard S. Cohen, U.S. Atty., D. of Maine, and Peter A. Nowinski, Scott L. Gorland, U.S. Dept. of Justice, Washington, D.C., for United States of America.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Presently pending in this Court are approximately 230 actions brought against various manufacturers and suppliers of asbestos products by present and former employees, and the representatives of deceased employees, of either Bath Iron Works (BIW) or Portsmouth Naval Shipyard (PNS) who allegedly sustained injuries through exposure to and inhalation of asbestos dust during the course of their employment. Plaintiffs have asserted theories of liability based on negligence, strict liability and breach of express and implied warranties. Jurisdiction is predicated upon diversity of citizenship. 28 U.S.C. § 1332(a); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.1983).

Various defendants have asserted in their answers an affirmative defense based on what has been termed the "government contract defense." Their argument is that liability may not be imposed upon them for injuries arising out of plaintiffs' exposure to their asbestos products because they had manufactured such products in strict compliance with specifications prescribed by the United States government. Two motions addressed to this defense are before the Court at this time: (1) a motion filed by defendant Pittsburgh Corning Corporation pursuant to Fed.R.Civ.P. 42(a) and (b) for an order consolidating all cases pending against it in this Court arising out of either BIW or PNS solely for the purposes of conducting a Phase I trial and related discovery on the issues raised by the government contract defense, and directing that a Phase I trial be conducted to determine whether Pittsburgh Corning has a complete defense to these actions based upon compliance with government specifications; (2) a cross-motion filed by plaintiffs pursuant to

Fed.R.Civ.P. 12(f) for an order striking from any defendant's answer any affirmative defense based on compliance with government specifications. The issues have been comprehensively briefed and argued.[*]

The motions present two distinct questions:

(1) Should the government contract defense be stricken as a matter of law?

(2) If not, should the Court conduct a Phase I trial to resolve issues relating to the government contract defense?

The Court will first consider whether the government contract defense should be stricken as a matter of law, since an affirmative response to that question will dispose of the need to discuss the second question. These being diversity cases, Maine law controls and will determine the legal sufficiency of the defense. *Austin v. Unarco Industries, Inc.;* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1381 at 798–99 (1969).

I.

*Plaintiffs' Motion to Strike*

*The Government Contract Defense*

■ A Rule 12(f) motion to strike an affirmative defense as insufficient is directed toward the pleadings and should not be granted unless, as a matter of law, the defense could not succeed under any circumstances. 5 C. Wright & A. Miller, *supra* at 800. Where there are disputed issues of fact or substantial issues of law, a motion to strike should not be used to test the merits of the defense; close or new questions of law and disputed factual issues should await a full hearing on the merits. *Id.* at 800–02, and cases cited n. 37. The Maine court has never had occasion to consider the merits of the government contract defense. Plaintiffs have not

shown that Maine law would unequivocally reject such a defense or would find it inapplicable to the facts of these asbestos cases. In the absence of an authoritative determination by the Maine court as to the merits or scope of the defense, this Court cannot say whether Maine law would recognize or apply the government contract defense in these cases. For these reasons, plaintiffs' motion to strike the government contract defense must be denied because there are both disputed factual issues and substantial issues of law to be resolved before the validity of the defense in the present context may be determined.

■ In *In re "Agent Orange" Product Liability Litigation,* 534 F.Supp. 1046, 1055 (E.D.N.Y.1982) [*Agent Orange II*], Judge Pratt set forth the basic contours of the government contract defense. To obtain dismissal of the claims against it, the defendant must prove:

1) that the government established the specifications for the product supplied by the defendant;

2) that the product manufactured by the defendant met the government's specifications in all material respects; and

3) that the government knew as much as or more than the defendant about the hazards associated with the product.

Preliminarily, the defendant must show that the product causing the injury was supplied pursuant to a government contract. *Id.*

Even assuming that the Maine court would accept the foregoing statement of the government contract defense, courts in other jurisdictions have not resolved many questions concerning its parameters. Thus, the government contract defense has been most successfully asserted by government contractors who were required to produce products in compliance with military specifications. *See, e.g., McKay v. Rockwell International Corp.,* 704 F.2d 444

---

[*] It is not clear which defendants join in Pittsburgh Corning's motion, but the Court will assume that all defendants do. Pittsburgh Corning, Keene Corporation, Eagle-Picher, GAF Corporation, Unarco and Owens Corning have filed supporting memoranda of law. Plaintiffs and the United States (joined as a third-party defendant in these actions) have filed briefs opposing Pittsburgh Corning's motion.

(9th Cir.1983) (design defects in aircraft ejection system where military had set and approved design specifications); *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982) (defective bulldozer which had been built to Army specifications); *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 762, 792–97 (E.D.N.Y. 1980), *rev'd on other grounds*, 635 F.2d 987 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) [*Agent Orange I*] (Agent Orange manufactured under Defense Production Act in strict compliance with government specifications); *Sanner v. Ford Motor Co.*, 144 N.J.Super. 1, 364 A.2d 43 (1976), *aff'd*, 154 N.J.Super. 407, 381 A.2d 805 (1977), *cert. denied*, 75 N.J. 616, 384 A.2d 846 (1978) (jeep manufactured for the United States Government pursuant to government specifications which did not permit the installation of a roll bar or seat belts); *Casabianca v. Casabianca*, 104 Misc.2d 348, 428 N.Y.S.2d 400 (1980) (kitchen equipment manufactured according to government specifications for field use during World War II). Does the teaching of these cases mean, as plaintiffs contend, that the government contract defense is only available with respect to products specifically designed by the government for a unique military use? *See Agent Orange II*, 534 F.Supp. at 1054–55.

These asbestos cases present other unanswered questions as well. For example, is the defense available with respect to a generally available commercial product, such as asbestos, or is it, as plaintiffs argue, limited to products required by and tailored to military requirements? *Compare Chapin v. Johns-Manville Sales Corp.*, No. S79–072. (S.D.Miss. Jan. 27, 1982), *with Tefft v. A.C. & S., Inc.*, No. C–80–924M (W.D.Wash. Sept. 15, 1982) [*Tefft I*], *relief on reconsideration denied, Tefft v. A.C. & S., Inc.*, No. C–80–924M (W.D.Wash. May 6, 1983) [*Tefft II*]. Is the defense inapplicable, as plaintiffs urge, to a strict products liability claim? *Compare Chapin v. Johns-Manville Sales Corp. with Agent Orange II*, 524 F.Supp. at 1054 n. 1, and *Tefft I*. Is the defense unavailable, as

plaintiffs contend, if the contract set forth a "performance specification," rather than a requirement of a specific product? *See Agent Orange II*, 534 F.Supp. at 1056. Does the fact that, as plaintiffs assert, defendants had input into the formulation of the government specifications preclude application of the defense? *Compare O'Keefe v. Boeing Co.*, 335 F.Supp. 1104, 1124 (S.D.N.Y.1971) *with Agent Orange II*, 534 F.Supp. at 1056. Especially in a failure-to-warn case, is it necessary, as plaintiffs contend, that the absence of any warning have been required by the government specifications before defendants can validly assert a government contract defense? *See Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 73 Ill.Dec. 350, 357, 454 N.E.2d 210, 217 (Ill.Sup.Ct.1983); *Johnston v. United States*, 568 F.Supp. 351, 355 (D.Kan.1983). Must there have been, as plaintiffs contend, some degree of coercion before defendants may invoke the government contract defense successfully? *See Merritt, Chapman & Scott Corp. v. Guy F. Atkinson Co.*, 295 F.2d 14, 16 (9th Cir.1961). Each of these legal issues, in turn, raises triable issues of fact, which it would be inappropriate for the Court to attempt to resolve on the limited record before it.

The foregoing and other unanswered questions have made the applicability of the government contract defense to asbestos cases especially unclear. Two courts have held that the government contract defense cannot be stricken as a matter of law. *Tefft I & II* (government contract defense available under Washington law; defense applicable even though defendants' asbestos products sold to both military and civilian users; defense applies in both negligence and strict liability cases); *In re Related Asbestos Cases*, 543 F.Supp. 1142, 1151–52 (N.D.Cal.1982) (plaintiff's motion to strike government contract defense denied, but defense may not be applicable if defendants merely supplied Navy with same products supplied for nonmilitary use and had not specifically manufactured asbestos products pursuant to government

specifications). On the other hand, several courts have rejected the government contract defense outright in asbestos cases. *Chapin v. Johns-Manville Sales Corp.* (defendants' motion *in limine* to prohibit introduction of evidence of exposure to asbestos used on United States Navy vessels denied where none of defendants' asbestos products specifically manufactured for Navy, but manufactured for general use; defense would not be available in strict liability case if defendant failed to give adequate warning of foreseeable risk); *Hammond v. North American Asbestos Corp.* (compliance with government specifications for marking of asbestos bags did not relieve defendant of duty to warn; defendant cannot rely on government contract defense as a matter of law). *Philomena Nobriga v. Johns-Manville Sales Corp.*, No. 55624, slip op. at 9–11 (Hawaii Cir.Ct. May 24, 1982) (compliance with government specifications does not relieve defendant of liability for failure to warn in strict liability action); *Plas v. Raymark Industries, Inc.*, No. C–78–946 (N.D.Ohio May 3, 1983) (transcript of chambers ruling at 2) (motion to strike government contract defense summarily granted where defendant invented product sold to government, worked with government on specifications, and sold same product to private sector); *Raybestos-Manhattan, Inc. v. United States*, No. 79–0382 (D. Hawaii Oct. 20, 1983) (motion to strike government contract defense granted under Hawaii law; no overriding federal policy of immunity to support application of the government contract defense in view of the absence of admiralty jurisdiction and the lack of sovereign immunity under the Federal Employees Compensation Act). Finally, three courts, in denying the defendant manufacturers' motion for a Phase I trial on the government contract defense, have expressly declined to rule on the merits of the defense. *McCrae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490 (E.D.Pa.1983); *In re General Dynamics Asbestos Cases*, C.M.L. No. 1 (D.Conn. Apr. 22, 1983); *In re Massachusetts Asbestos Cases*, M.B.L. Nos. 1 & 2 (D.Mass. Sept. 13, 1983) (transcript of magistrate's hearing at 72). There has been no asbestos case in which the defendant manufacturers have successfully established compliance with government specifications as an absolute defense on the merits.

The government, in support of plaintiffs' position, suggests that, even though the Maine court has not yet ruled on the viability or parameters of the government contract defense, general principles of Maine tort law indicate that the Maine court would not recognize the government contract defense. The government points out that under Maine agency law an agent with discretion to control his or her own actions remains liable for injuries proximately resulting from those actions. *See Atkins v. Fields*, 89 Me. 281, 36 A. 375 (1896); *Brooks v. Jacobs*, 139 Me. 371, 31 A.2d 414 (1943); *Pennell v. Home Owner's Loan Corp.*, 21 F.Supp. 497 (D.Me.1937). But even if this Court were to accept these cases as dispositive, one of the central questions in this asbestos litigation is the amount of discretion the defendant asbestos manufacturers could exercise and still comply with the government specifications.

Moreover, the Maine court has not addressed the competing public policies involved when a contractor supplies goods or services in accordance with specifications set by the government. In the seminal case of *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), the Supreme Court held that a contractor who properly performed work pursuant to a public works contract with the United States government was entitled to share in the government's immunity from suit and would not be liable for damages to third persons. Other courts have urged that, apart from the public works context in which the power of eminent domain would make little sense if it were not extended to government contractors, the defense is essential to the efficient management of government procurement programs, reasoning that to impose liability on the government contractor would frustrate the ability of the government to obtain necessary products and increase the

amount of bids to cover the contractor's risk of loss. *See, e.g., Agent Orange I*, 506 F.Supp. at 792–94; *Dolphin Gardens, Inc. v. United States*, 243 F.Supp. 824, 827 (D.Conn.1965); *Casabianca v. Casabianca*, 428 N.Y.S.2d at 402. A countervailing policy would favor placing the risk of loss upon the contractor who would be in a better position to acquire insurance or obtain indemnification from the government than an innocent third party. *See McKay v. Rockwell International Corp.*, 704 F.2d at 457 (Alarcon, J., dissenting); Note, *The Government Contract Defense in Strict Liability Suits for Design*, 48 U.Chi.L.Rev. 1050 (1981). Since the Maine court has had no occasion to choose between these conflicting policies, this Court cannot speculate on whether Maine law would recognize the government contract defense as the facts may develop in these cases.

In view of the foregoing substantial and unresolved factual and legal questions, it would be inappropriate for the Court to rule at this time on the merits of defendants' government contract defense. Plaintiffs' cross-motion to strike that defense must therefore be denied.

## II.

### Defendants' Motion for a Phase I Trial

Defendants' motion for a Phase I trial is predicated on Fed.R.Civ.P. 42(b), which provides that a court may order a separate trial of any separate issue "when separate trials will be conducive to expedition and economy." Defendants urge that a Phase I trial on the government contract defense will be expeditious in that, after limited discovery and a relatively short trial, if all defendants prevail, the actions will be terminated, and if only some of the defendants are eliminated, the cases will be simplified to that extent. Defendants rely on *Agent Orange II* and *Tefft I & II*, in which similar motions were granted with respect to the government contract defense. Plaintiffs vigorously contest the motion. They assert that a Phase I trial would not be of short duration, would be unworkable and confusing to the jury, and would, at most,

eliminate only some of the defendants from the actions. Plaintiffs rely on *McCrae v. Pittsburgh Corning Corp., In re General Dynamics Asbestos Cases*, and *In re Massachusetts Asbestos Cases*, in which such concerns resulted in the denial of defendants' motions for a Phase I trial on the government contract defense.

■ Having weighed the competing considerations presented by the parties, the Court has concluded that a Phase I trial of the government contract defense asserted by defendants in these actions would be unwieldy and confusing and would not be "conducive to expedition and economy." First, because each plaintiff was allegedly exposed to asbestos products manufactured by defendants which were also used on private or foreign vessels and other products which were not sold pursuant to government specifications, a Phase I trial would not eliminate any of the plaintiffs, and all their cases would remain on the Court's docket. Second, even if a viable government contract defense can be asserted under Maine law, it is likely that a Phase I trial would, at most, eliminate only some of the defendants from these cases. Third, assuming that the government contract defense is recognized by Maine law, "[p]erhaps the central question for the Phase I trial" will be "whether the Government knew as much as the defendants did about the hazardous aspects of this product." *Agent Orange II*, 534 F.Supp. at 1057. In these cases, plaintiffs' exposure to asbestos extended over several decades, and defendants supplied asbestos at varying times over an extended period of years. In any Phase I trial, the jury would be faced with the task of comparing the government's knowledge of the hazards of asbestos with that of each defendant, during different time periods when one or more plaintiffs were exposed to a defendant's product. The complexities of proof would be compounded to the extent that government specifications may have changed over time or may have differed with respect to the product furnished by different defendants. Finally, it is by no

means clear, as defendants argue, that the evidence relating to the government contract defense can be isolated from that which would be presented in a trial on liability and general causation. To the contrary, the issue of the relative knowledge of the government and each defendant, the principal question in a Phase I trial, is inextricably linked to the issues of liability and general causation presented by these cases. Indeed, Judge Pratt, who originally embraced the concept of a Phase I trial in *Agent Orange I & II,* modified his position in his most recent opinion, concluding that a separate trial on the government contract defense would "necessarily involve most of the evidence needed for trial on the issues relating to liability and general causation." *In re "Agent Orange" Products Liability Litigation,* M.D.L. 381, slip op. at 39 (E.D. N.Y. May 12, 1983) [*Agent Orange III*].

These are the concerns, among others, which have led this Court to conclude that the Phase I trial requested by these defendants must be rejected as "unwieldy and confusing," *McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. at 493, and that "delay, inconvenience, expense and confusion would be engendered by the extraordinary measure of a Phase I trial," *In re General Dynamics Asbestos Cases,* slip op. at 2. In short, defendants have not persuaded the Court that a Phase I trial would significantly advance this litigation.

### III.

#### *Order*

In accordance with the foregoing, it is ORDERED that

(1) Plaintiffs' cross-motion for an order striking from any defendant's answer any affirmative defense based on compliance with government specifications is DENIED;

(2) Defendants' motion for a consolidated Phase I trial on the government contract defense is DENIED.