**Nancy L. TILLETT, Administratrix of the Estate of Stephen M. Tillett, Plaintiff-Appellant,**

v.

**J.I. CASE COMPANY, Defendant-Appellee.**

No. 84-1439.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1984.

Decided March 11, 1985.

and would have lacked the enforceability of a Board order.

Donald H. Carlson, Riordan, Crivello, Carlson, Mentkowski & Henderson, Milwaukee, Wis., for plaintiff-appellant.

Terry E. Johnson, Peterson, Johnson & Murray, Milwaukee, Wis., for defendant-appellee.

Before WOOD, Circuit Judge, PELL, Senior Circuit Judge, and GRANT, Senior District Judge.*

PELL, Senior Circuit Judge.

Nancy L. Tillett, a resident of Pennsylvania and administratrix of the estate of her deceased husband, Stephen M. Tillett, filed suit in the United States District Court for the District of Columbia seeking damages

---

* Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

for the allegedly wrongful death of her husband, a United States serviceman. Pursuant to 28 U.S.C. § 1404(a), the District of Columbia court transferred Tillett's action to the Eastern District of Wisconsin after defendant J.I. Case Company demonstrated that the District of Columbia court lacked personal jurisdiction over Case. Defendant Case subsequently filed a motion for summary judgment in the Wisconsin district court, which the court granted. Appellant Tillett appeals from this final judgment to this court.

On July 19, 1979, appellant's decedent, Stephen M. Tillett, was operating a front end loader at a United States military base in West Germany. Tillett was a soldier in the United States Army at this time, and was operating the front end loader incident to his military service. The loader overturned and crushed Tillett, resulting in his death.

The defendant J.I. Case Company, a Delaware corporation whose principal place of business was in Wisconsin, was the manufacturer of the front end loader. The suit was filed nearly three years after Tillett's death.

## I. CHOICE OF LAW

The Wisconsin district court acknowledged the significant choice of law issues presented by this case and noted that five jurisdictions shared some degree of nexus with the parties and/or the controversy in it. *Tillett v. J.I. Case Co.*, 580 F.Supp. 1276, 1277 (E.D.Wis.1984). These jurisdictions included West Germany, the situs of decedent's accident, Pennsylvania, plaintiff's domicile, Delaware, the state of defendant's incorporation, Wisconsin, defendant's principal place of business and Indiana, the jurisdiction where Case manufac-

tured the front end loader. *Id.* The district court determined, however, that West Germany and Delaware had insufficient contacts with the litigation to justify application of either forum's law. *Id.* at 1277–78. The district court likewise determined that Pennsylvania's wrongful death statute could not apply to the case because Pennsylvania courts had declined to exercise wrongful death jurisdiction in cases involving deaths caused outside Pennsylvania. *Id.* at 1278. The district court then confronted a choice between Indiana and Wisconsin law.

■ Following the rule of *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the district court sitting in diversity applied Wisconsin's conflict of law rules to determine whether Wisconsin or Indiana law governed Tillett's wrongful death case.[1] *Id.* The court characterized the choice between the laws of these two fora as an outcome determinative choice because Tillett's action was untimely under Indiana's wrongful death statute but timely under Wisconsin's wrongful death rules. *Id.* The court then applied Wisconsin's choice of law approach to resolve this outcome determinative conflict. *Id.* Specifically, the district court analyzed the following choice-influencing considerations in deciding whether to apply Indiana or Wisconsin law: predictability of results; maintenance of interstate and international order; simplification of the judicial task; advancement of the forum's governmental interests; and application of the better rule of law. *Id.* The court then determined that Wisconsin courts would choose to apply Wisconsin law under the circumstances of this case. *Id.*

---

1. The district court, however, failed to note that the case triggered the rules of *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and its progeny because Tillett originally invoked the diversity jurisdiction of a transferor forum which lacked personal jurisdiction over Case. Although under *Van Dusen* the transferor forum's choice of law principles would govern Tillett's action if the District of Columbia had possessed personal jurisdiction over Case, the Wisconsin transferee forum's choice of law rules do govern her claim because no such jurisdiction existed. *See Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 (11th Cir.1982); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir.1981). Thus, the district court correctly applied Wisconsin choice of law rules to this action.

This court agrees that the jurisdictions of West Germany and Delaware possess insufficient interest in the outcome of this litigation to justify the application of either forum's law to the facts of the case. We furthermore agree that Pennsylvania courts would decline to exercise wrongful death jurisdiction over this controversy involving a West German accident. Finally, this court agrees that Tillett's action is untimely under Indiana's two-year statute of limitations for wrongful death actions, IND.CODE ANN. § 34–1–1–2 (Burns Supp.1984), but timely under Wisconsin's three-year wrongful death rule. WIS.STAT. § 893.54(2) (1981–82). Thus, the case presents an outcome determinative conflict between the laws of Indiana and Wisconsin.

The district court correctly stated and applied Wisconsin's choice-influencing considerations to resolve this conflict. Wisconsin courts consistently have applied these considerations to tort cases involving conflicts between the laws of Wisconsin and the laws of other interested jurisdictions. *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 202, 206 N.W.2d 414, 418 (1973); *Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 598–99, 204 N.W.2d 897, 902 (1973); *Heath v. Zellmer*, 35 Wis.2d 578, 595–96, 151 N.W.2d 664, 672 (1967). Wisconsin courts have also utilized this choice of law approach in cases involving conflicts between Wisconsin statutes of limitation and the limitation periods of other states. *Central Mutual Insurance Co. v. H.O., Inc.*, 63 Wis.2d 54, 65, 216 N.W.2d 239, 244 (1974); *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d at 203, 206 N.W.2d at 419. The district court found that Wisconsin courts would apply Wisconsin's wrongful death statute to analyze Tillett's claim, including that statute's three-year limitation period. *Tillett v. J.I. Case Co.*, 580 F.Supp. at 1278. This court concurs in the district court's conclusions. We therefore analyze Tillett's wrongful death claim under Wisconsin and not Indiana law.

## II. WISCONSIN'S WRONGFUL DEATH STATUTE

Wisconsin's wrongful death statute, WIS.STAT. § 895.03 (1981–82), provides:

Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured, *provided, that such action shall be brought for a death caused in this state.*

(Emphasis added). Thus, Wisconsin requires as a condition precedent to wrongful death recovery that the decedent's death have been caused by some act or omission occurring in Wisconsin. *Schnabl v. Ford Motor Co.*, 54 Wis.2d 345, 353, 195 N.W.2d 602, 606 (1972); *Rudiger v. Chicago, St. P., M. & O. Railway*, 94 Wis. 191, 194, 68 N.W. 661, 662 (1896).

Wisconsin courts interpreting the wrongful death statute do not require that a decedent's death occur in Wisconsin, but rather merely require that some substantial factor contributing to decedent's death occur within the state. *Schnabl v. Ford Motor Co.*, 54 Wis.2d at 353–54, 195 N.W.2d at 607. In *Schnabl*, for example, the Wisconsin Supreme Court found that delivery in Wisconsin of a faulty seat belt constituted such a "substantial factor" which contributed to decedent's subsequent death by car accident in Indiana. *Id.*, 54 Wis.2d at 353–54, 195 N.W.2d at 607. The *Schnabl* court likened the substantial factor requirement of the Wisconsin wrongful death statute to the proximate cause issue in negligence cases. *Id.*, 54 Wis.2d at 353, 195 N.W.2d at 606.

In this case, plaintiff alleges that defendant defectively designed the front end loader that overturned and caused the death of her husband, and concludes that defendant should be held liable in negligence, in strict

products liability and/or in breach of warranty. Specifically, plaintiff contends that defendant Case defectively designed the front end loader because defendant failed to equip the loader with a salvific roll-over device. Plaintiff maintains that defendant made certain design decisions in Wisconsin relating to the lack of roll-over protection. Plaintiff asserts that these decisions were a substantial factor in causing decedent's subsequent death, and thus supplied the jurisdictional prerequisite to defendant's wrongful death liability in Wisconsin.

Defendant, on the other hand, contends that it did not design the front end loader at all, and therefore made no design decisions in Wisconsin or in any other location concerning the lack of roll-over protection. Defendant maintains that any design defect causing decedent's death existed in the Government's specifications for the loader, which defendant by contract was obligated to follow. Defendant asserts that all actions on its part relating to production of the front end loader occurred at the Case plant in Terre Haute, Indiana, where defendant manufactured and eventually delivered the front end loader to the Government.

The district court agreed with defendant and found that the Government provided all specifications for the front end loader. *Tillett v. J.I. Case Co.*, 580 F.Supp. at 1279. The court furthermore found that all design, manufacture and shipment of the loader occurred in Indiana. *Id.* The court found the designation "J.I. Case Co. Racine, Wisconsin" on the loader insufficient to imply that a design decision relating to the front end loader occurred in Wisconsin, particularly because the designation appeared on all J.I. Case products, regardless of the site of their manufacture. *Id.* The district court concluded that defendant was not liable for decedent's allegedly wrongful death on the basis of negligence, products liability, or breach of warranty because no

act by defendant in Wisconsin was a substantial factor in causing decedent's death. *Id.* at 1280.

■ This court agrees that plaintiff must prove that an act or omission by defendant, which occurred in Wisconsin, was a substantial factor in causing decedent's death in order to recover under the Wisconsin wrongful death statute. Because plaintiff's case rests on some defect in the design of the loader, plaintiff must therefore prove that some design decision or design action by defendant occurred in Wisconsin. Plaintiff has failed to proffer such proof.

The sole evidence presented by plaintiff linking the design of the front end loader to J.I. Case in Wisconsin is a stamp or designation appearing on all J.I. Case products, wherever designed or manufactured.[2] This evidence is insufficient to establish that a substantial factor causing decedent's death occurred in Wisconsin. Moreover, even if delivery of a defectively designed loader in Wisconsin could constitute a substantial factor in causing a subsequent death outside the state, as in *Schnabl v. Ford Motor Co.*, 54 Wis.2d 345, 195 N.W.2d 602 (1972), defendant delivered the front end loader in this case in Indiana.

■ Plaintiff's cause of action for decedent's allegedly wrongful death is purely statutory, and turns solely on the wording of Wisconsin's wrongful death statute. *Harris v. Kelley*, 70 Wis.2d 242, 247, 234 N.W.2d 628, 630 (1975); *Cogger v. Trudell*, 35 Wis.2d 350, 353, 151 N.W.2d 146, 147 (1967); *Anderson v. Miller Scrap Iron Co.*, 176 Wis. 521, 525, 182 N.W. 852, 854 (1921). Because plaintiff has failed to prove that a substantial factor causing decedent's death occurred in Wisconsin, plaintiff has failed to raise a genuine issue with respect to her right to recover under the Wisconsin statute. Although the wrongful

---

2. Plaintiff did present evidence that defendant manufactured the *engine* of the front end loader in Wisconsin. Nevertheless, manufacture of the engine in Wisconsin does not link plaintiff's cause of action to Wisconsin because plaintiff never alleged that the engine of the front end loader was defective. This Wisconsin activity of defendant is therefore irrelevant to our consideration of plaintiff's case.

death statute is remedial, and this court should construe it broadly in order to reflect its remedial purpose, *Kwaterski v. State Farm Mutual Automobile Insurance Co.*, 34 Wis.2d 14, 21, 148 N.W.2d 107, 111 (1967), this court cannot strain to find the existence of a genuine issue of material fact where no such issue exists. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972); *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir.1970). This court accordingly holds that the district court correctly granted defendant's motion for summary judgment on the ground that plaintiff failed to prove that defendant caused decedent's death in Wisconsin.

## III. THE GOVERNMENT CONTRACT DEFENSE

Even if the district court's conclusion that decedent's death was caused outside Wisconsin were incorrect, this court would still affirm the district court's entry of summary judgment if sufficient alternative grounds existed for the district court's decision. For example, this court would affirm the district court's entry of summary judgment for defendant if defendant established a valid affirmative defense to wrongful death liability. In this case, defendant contends that it should be protected from liability for defects in the design of the front end loader because it manufactured the loader in strict compliance with specifications supplied to it by the Government.

This "government contract defense" derives from cases such as *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), where the Supreme Court found a government contractor not liable for erosion occurring on land adjacent to certain Missouri River dikes which the United States Government had employed the defendant to construct. *Id.* at 20–21, 60 S.Ct. at 414–415. The Court explained that a government contractor should not be held liable for executing the Government's will so long as the contractor possessed valid authority to carry out its contract. *Id.* The government contract defense additionally derives from ear-

ly cases such as *Ryan v. Feeney & Sheehan Building Co.*, 239 N.Y. 43, 145 N.E. 321 (1924), involving contracts in the private sector. These cases stand for the proposition that an ordinary contractor may rely on the plans and specifications furnished to him by another unless those plans and specifications are so obviously defective that a contractor of ordinary prudence would not follow them. *Davis v. Henderlong Lumber Co.*, 221 F.Supp. 129, 134 (N.D.Ind.1963); *Ryan v. Feeney & Sheehan Building Co.*, 239 N.Y. at 44–46, 145 N.E. at 321–22.

Countless recent cases have examined the reasoning in *Yearsley* and cases like *Ryan* in the context of government contracts for weaponry, military hardware and general military equipment. *See, e.g., McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982); *Hubbs v. United Technologies*, 574 F.Supp. 96 (E.D.Pa. 1983); *In re "Agent Orange" Product Liability Litigation*, 534 F.Supp. 1046 (E.D.N. Y.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). These cases have updated the government contract defense to reflect significant developments in the area of tort suits against the United States Government. In particular, these cases have shaped the contours of the government contract defense in light of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, as well as *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). *Feres*, of course, sets forth the principle that the Government is not liable for injuries to servicemen where the injuries arise out of, or in the course of, activity incident to military service. *Feres v. United States*, 340 U.S. at 146, 71 S.Ct. at 159. *Feres* not only bars suits by injured servicemen as plaintiffs, but also bars derivative actions by relatives of servicemen who seek damages resulting from injuries the servicemen suffered incident to service. *See In re "Agent Orange" Product Liability Litiga-*

*tion,* 506 F.Supp. 762, 780 (E.D.N.Y.1980), *rev'd on other grounds,* 635 F.2d 987 (2d Cir.1980), *cert. denied,* —— U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). *Stencel,* similarly, bars indemnity actions by third-party contractors against the Government for damages paid by such contractors to members of the military, or their dependents, for injuries incurred by military servicemen in the course of their military service. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. at 673, 97 S.Ct. at 2059.

Many cases exploring the government contract defense have employed a fairness rationale in considering whether a government contractor who complies with government specifications should share in the Government's *Feres* and *Stencel* immunity. *McKay v. Rockwell International Corp.,* 704 F.2d 444, 448 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Brown v. Caterpillar Tractor Co.,* 696 F.2d 246, 252–53 (3d Cir. 1982); *Koutsoubos v. Boeing Vertol, Division of Boeing Co.,* 553 F.Supp. 340, 341–42 (E.D.Pa.1982). These cases acknowledge that holding a military supplier liable without regard to the extent of Government involvement in fixing the design of a product would undermine the Government's *Feres-Stencel* immunity because military suppliers would impose the cost of accidents on the United States through contractual mechanisms in equipment contracts. *McKay v. Rockwell International Corp.,* 704 F.2d at 449.

The Ninth Circuit recently articulated three additional reasons for extending the umbrella of *Feres-Stencel* immunity to government contractors. *McKay v. Rockwell International Corp.,* 704 F.2d at 449–50. First, holding contractors liable for design defects created or approved by the Government would thrust the judiciary into the decision-making process of the military, raising separation of powers concerns. *Id.* at 449. Second, government contractors producing state-of-the-art equipment for the Government more often than not possess no negotiating leverage and are compelled by federal law to produce weapons of war under contracts of adhesion. *Id.* at 449–50. Third, extension of the Government's immunity provides incentives for suppliers of military equipment to consult and collaborate with the Government in the development and testing of equipment. *Id.* at 450.

■ These reasons convinced the Ninth Circuit to accept the government contract defense in design defect cases [3] against suppliers of military equipment under the following circumstances:

(1) the United States is immune from liability under *Feres* and *Stencel;*

(2) the supplier proves that the United States established, or approved, reasonably precise specifications for the allegedly defective military equipment;

(3) the equipment conformed to those specifications; and

(4) the supplier warned the United States about patent errors in the [G]overnment's specifications or dangers involved in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 451.

Plaintiff Tillett asserts that the government contract defense should not be available to a government contractor despite the existence of the foregoing circumstances unless the contractor can also prove that the Government compelled it to carry out its contract to produce military equipment. This court declines to require compulsion as an element of the government contract defense. Not only did the Ninth Circuit fail to include compulsion as a requirement of the government contract defense in *McKay,* 704 F.2d at 451, but the Eastern District of New York similarly excluded

---

**3.** The *McKay* court limited its holding to design defect cases based on § 402A of the Restatement (Second) of Torts. *McKay v. Rockwell International Corp.,* 704 F.2d at 451. Nevertheless, the court's reasoning applies equally well to design defect cases based on negligence and/or breach of warranty claims.

compulsion as an element of the defense in the much publicized Agent Orange litigation before it. *In re "Agent Orange" Product Liability Litigation,* 534 F.Supp. 1046, 1055 (E.D.N.Y.1982), *cert. denied,* ── U.S. ──, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984).[4]

 We thus consider the applicability of the government contract defense to the facts of this case without a requirement of compulsion. We furthermore observe that, as a preliminary matter, a defendant asserting the government contract defense must prove that it supplied the product which caused the relevant injury pursuant to a contract with the Government. *In re All Maine Asbestos Litigation,* 575 F.Supp. 1375, 1377 (D.Maine 1983). In this case, neither plaintiff nor defendant disputes that the front end loader caused decedent's death. In addition, neither party disputes that defendant produced the front end loader pursuant to a contract with the United States Government. Thus, defendant satisfies this preliminary burden of proof with respect to the government contract defense.

A second preliminary inquiry concerns whether the front end loader produced by Case qualifies as "military equipment." This court does not hesitate to declare that it does. This court notes that such items as pizza machines, jeeps, and tractors have qualified as military equipment for purposes of the government contract defense, in addition to weapons of war and defoliants such as Agent Orange. *See Casabianca v. Casabianca,* 104 Misc.2d 348, 428 N.Y.S.2d 400 (1980); *Sanner v. Ford Mo-*

*tor Co.,* 144 N.J.Super. 1, 364 A.2d 43 (1976), *aff'd,* 154 N.J.Super. 407, 381 A.2d 805 (1977), *cert. denied,* 75 N.J. 616, 384 A.2d 846 (1978); *Brown v. Caterpillar Tractor Co.,* 696 F.2d 246 (3d Cir.1982). Consequently, this court finds that the front end loader in this case falls well within the confines of the term "military equipment."

According to *McKay v. Rockwell International Corp.,* 704 F.2d at 451, the first requirement of the government contract defense is the presence of *Feres-Stencel* immunity on the part of the Government. *Feres-Stencel* immunity requires that a plaintiff's complaint arise from an injury to a serviceman in the course of activity incident to military service. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. at 673, 97 S.Ct. at 2059; *Feres v. United States,* 340 U.S. at 146, 71 S.Ct. at 159. In this case, plaintiff's complaint arises from the death of a serviceman caused by the overturning of a front end loader which the serviceman was operating incident to his service in the United States Army. This case thus falls within the protective ambit created by *Feres* and *Stencel.* Accordingly, the Government would be immune from liability to plaintiff for the allegedly wrongful death of her husband and would also be immune from liability to defendant Case if Case sued the United States Government as a third-party defendant.

The second element of the government contract defense, as the Ninth Circuit formulated the defense in *McKay,* 704 F.2d at 451, is establishment or approval by the United States Government of reasonably precise specifications for an allegedly de-

---

**4.** The Eastern District of New York determined that defendants in the Agent Orange litigation would be entitled to a judgment dismissing all claims against them based on their production of Agent Orange for the Government if they established the following factors:

(1) That the Government established the specifications for Agent Orange;

(2) That the Agent Orange manufactured by the defendant[s] met the Government's specifications in all material respects;

(3) That the Government knew as much or more than defendant[s] about the hazards that accompanied the use of Agent Orange.

*In re "Agent Orange" Product Liability Litigation,* 534 F.Supp. at 1055. Because the formulation of the government contract defense introduced by the Ninth Circuit in *McKay,* 704 F.2d at 451, includes *Feres-Stencel* immunity on the part of the Government as an element of the defense, this court finds that the Ninth Circuit's formulation better reflects the influences of *Feres-Stencel* immunity upon the relationship between the Government and its contractors. Thus, this court shall employ the Ninth Circuit's approach in its analysis of this case.

fective product. In this case, the evidence submitted to the district court demonstrated that the Government provided defendant with specifications for various component parts of the front end loader. The Government's specifications did not include the presence of roll-over protection on the front end loader. The Government specified that defendant should produce the loader in conformance with defendant's own commercial specifications in any areas in which the Government's specifications were silent. The Government further required defendant to produce a prototype of the front end loader, and to submit this prototype to Government inspection and approval before manufacture of the final product. The evidence indicated that defendant submitted to the Government for approval a prototype of the front end loader which did not include roll-over protection. The evidence also indicated that the Government approved defendant's prototype. Under these circumstances, this court finds that the Government established reasonably precise specifications for the front end loader and approved any supplementary specifications tendered by defendant in the form of a prototype loader. As a result, this court finds that the second element of the government contract defense is present in this case.[5]

The third element of the defense is compliance with the Government's specifications. *McKay v. Rockwell International Corp.*, 704 F.2d at 451. In this case, plaintiff does not dispute that defendant's front end loader conformed to the Government's specifications. Thus, the third element of the government contract defense is also present.

The fourth and final element of the government contract defense is a warning by the manufacturer to the United States with respect to any dangers associated with use of the product of which the

Government was unaware or as to which the Government possessed inferior knowledge. *Id.* The evidence presented to the district court demonstrated that the Government's own engineering standards in force at the time of its contract with Case specifically called for roll-over protection on vehicles similar to the front end loader produced by Case. The objective of these standards was to prevent the crushing of operators during roll-over. Because the Government possessed knowledge of the particular danger associated with use of the front end loader that is relevant to this case, this court finds that defendant had no obligation to warn the Government of the hazards associated with a lack of roll-over protection. Therefore, the fourth and final element of the government contract defense is also present in this case.

The sole inquiry remaining for the court in this diversity case is whether the government contract defense as articulated by the Ninth Circuit in *McKay* is the law of Wisconsin. Because the existence of the defense is a question of first impression in Wisconsin, this court must predict how Wisconsin courts would decide the issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 n. 6 (D.C.Cir. 1983); *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246, 250 (3d Cir.1982). As this court observed in *Daily v. Parker*, 152 F.2d 174, 177 (7th Cir.1945):

> If the state courts have not acted, we are free to take the course which sound judgment demands. In the absence of a state court ruling our duty is tolerably clear. It is to decide, not avoid, the question.

 Unfortunately, Wisconsin courts have given us no guidance whatsoever concerning the existence of the government contract defense.[6] Nevertheless, this court

---

**5.** Although defendant could have submitted for approval a front end loader which included roll-over protection, this court cannot speculate that the Government would have accepted such a product, particularly because the Government's own engineering standards called for

such roll-over protection and the Government chose to ignore these standards in its dealings with defendant.

**6.** This court finds, contrary to plaintiff's contention, that Wisconsin's adoption of strict liability in tort sheds no light on how the Wisconsin

believes that Wisconsin courts would accept the defense under the circumstances of this case, particularly in view of Wisconsin's avowed preference for "the better rule of law." *See Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 598–99, 204 N.W.2d 897, 902 (1973); *Heath v. Zellmer*, 35 Wis.2d 578, 595–96, 151 N.W.2d 664, 672 (1967). We note that the government contract defense properly reflects the influences of *Feres-Stencel* immunity upon the Government's relationship with its suppliers of military equipment, and appropriately permits the government contractor to share the Government's immunity in cases involving design decisions originating with the Government. We furthermore acknowledge the growing number of jurisdictions which have accepted the government contract defense in one form or another. *See, e.g., McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982); *In re All Maine Asbestos Litigation*, 575 F.Supp. 1375 (D.Maine 1983); *In re "Agent Orange" Product Liability Litigation*, 534 F.Supp. 1046 (E.D.N.Y.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984); *Green v. ICI America, Inc.*, 362 F.Supp. 1263 (E.D.Tenn.1973); *Hunt v. Blasius*, 55 Ill.App.3d 14, 12 Ill.Dec. 813, 370 N.E.2d 617 (1977), *aff'd*, 74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368 (1978). These developments persuade this court that Wisconsin would recognize the government contract defense under the circumstances of this case. We furthermore believe that Wisconsin would adopt the formulation of the government contract defense articulated by the Ninth Circuit in *McKay v. Rockwell International Corp.*, 704 F.2d at 451, because the Ninth Circuit's formulation best reflects the substantial policies underlying the defense.

This court also finds that defendant demonstrated to the district court that no genuine issue of material fact existed with respect to the applicability of the defense in

---

courts would evaluate the government contract

the case before the court. *Herman v. National Broadcasting Co.*, 744 F.2d 604, 607 (7th Cir.1984), *petition for cert. filed*, 53 U.S.L.W. 3552 (U.S. Jan. 10, 1985) (No. 84–1133). Therefore, this court alternatively holds that the district court should have granted defendant's motion for summary judgment on the ground that the government contract defense insulated defendant from liability. We affirm the final judgment of the district court, however, because we agree that summary judgment in favor of defendant was also appropriate on the ground that decedent's death was not caused in Wisconsin.

### IV. CONCLUSION

This court accordingly AFFIRMS the district court's entry of summary judgment in favor of defendant.