**Dr. Walter BURGESS and Mrs. Walter H. Burgess, Plaintiffs-Appellants,**

v.

**COLORADO SERUM COMPANY, INC., Defendant-Appellee.**

No. 84–7007.

United States Court of Appeals, Eleventh Circuit.

Oct. 3, 1985.

Rehearing and Rehearing En Banc Denied Nov. 21, 1985.

William W. Smith, Robert W. Beasley, Birmingham, Ala., for plaintiff-appellant.

J. Michael Crouch, Birmingham, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY,* Senior Circuit Judge.

THORNBERRY, Senior Circuit Judge:

Plaintiff-appellant Dr. Walter Burgess, a veterinarian, brought this action against Colorado Serum Company in Alabama state court. He alleged that he suffered injuries as a result of Colorado Serum's failure to warn of the dangers posed to humans by accidental injection of brucellosis vaccine. Colorado Serum removed the case to federal district court and moved for summary judgment. The district court granted Colorado Serum's motion for summary judgment, holding that the government contract defense insulated Colorado Serum from any liability to Burgess. Burgess appeals. Applying Alabama law, we affirm.

FACTS

On December 21, 1981, Burgess, a veterinarian for thirty years, was innoculating cattle with a brucellosis vaccine manufactured and packaged by Colorado Serum. A calf bolted as Burgess was giving it an injection of vaccine and the syringe flipped into the air and landed point first in Bur-

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

gess' right index finger. Burgess removed the needle from his finger, noticed a few drops of blood, and continued the vaccinations. He testified that he was not certain whether any of the brucellosis vaccine actually entered his finger. That evening Burgess had some soreness in the injured finger, but remained unconcerned. The next morning his finger had become swollen, and he went to his personal physician. Eventually, Burgess' finger had to be amputated.

Brucellosis is an incurable disease causing abortion in cattle. The U.S. Government began using the brucellosis vaccine in question in 1941 in conjunction with the National Brucellosis Eradication Program. Accidental injection of the vaccine into humans can cause undulant fever or human brucellosis. The symptoms of undulant fever include fever, aches, pains, chills, appetite and weight loss, and fatigue.

Colorado Serum manufactured the vaccine in question under a contract with the United States Department of Agriculture for use in the National Brucellosis Eradication Program. The government had developed the vaccine and the contract provided detailed specifications for its manufacture and production. The contract also provided the exact language to be printed on the label of the vaccine. Although the label did not warn specifically of the danger to humans, it did state that the vaccine was "for veterinary use only."

Burgess and his wife brought suit in Alabama state court against Colorado Serum and Dr. W.A. Mixon. They sought to recover under both a negligence theory and the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). The gravamen of their complaint was that the package containing the vaccine did not give proper warning of the vaccine's danger to humans. Dr. Mixon was dismissed from the action and Colorado Serum removed the case to federal district court on diversity grounds. Colorado Serum then moved for summary judgment on the theory that the government contract defense shielded it from liability. Although Burgess conceded that the government contract defense bars his negligence claim, he argued that Alabama would not allow the defense to defeat AEMLD claims. The district court granted summary judgment, holding that even though Alabama courts had not faced the issue they would apply the defense to AEMLD claims. Colorado Serum argued that the government contract defense is not available against strict liability claims. The court first responded that AEMLD is not a traditional strict liability doctrine, but retains concepts of fault. Second, the court stated that "the rule in the majority of jurisdictions is that the government contract defense is viable even in the strict liability realm. Alabama would, especially given its limited movement towards strict liability, follow the majority rule." The court also stated, without citation, that the defense is the law of Alabama.

On appeal Burgess contends that summary judgment was improper because Alabama would not apply the defense to AEMLD claims. Although we have been unable to find any decision accepting the government contract defense into Alabama jurisprudence, Burgess appears to concede that Alabama courts would recognize the defense at least as against negligence claims. Because we are convinced that the district court was correct in holding that Alabama would also recognize the defense against AEMLD claims, we affirm.

## DISCUSSION

Because we have been unable to find any decision accepting the government contract defense into Alabama jurisprudence, we must make our best *Erie* guess as to whether the Supreme Court of Alabama would recognize that doctrine as a defense to AEMLD claims. We are mindful, however, that "[a]s a general proposition, a federal court judge who sits in a particular state and has practiced before its courts may be better able to resolve complex questions about the law of that state than is some other federal judge who has no such personal acquaintance with the law of that state." C. Wright, Federal Courts 375

(4th ed. 1983). We, therefore, accord some deference to the district court's conclusion that Alabama would apply the government contract defense to AEMLD claims. Moreover, we agree with the district court that both the nature of AEMLD and the trend in other jurisdictions support that conclusion.

The government contract defense was first invoked by private contractors seeking to avoid liability for damages arising out of the performance of public work projects. *See, e.g., Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); *Myers v. United States*, 323 F.2d 580 (9th Cir.1963); *see generally* Note, The Government Contract Defense: Should Manufacturer Discretion Preclude Its Availability, 37 Me.L.Rev. 187 (1985); Note, The Government Contract Defense in Strict Liability Suits for Defective Design, 48 U.Chi.L.Rev. 1030 (1981). In recent years the defense has become a favorite shield of military contractors. *See, e.g., In Re Air Crash Disaster at Mannheim, Germany*, 769 F.2d 115 (3d Cir.1985); *Koutsoubos v. Boeing Vertol*, 755 F.2d 352 (3d Cir.1985); *Tillett v. J.I. Case Company*, 756 F.2d 591 (7th Cir.1985); *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656 (3d Cir.1984); *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir.1983) *cert. denied*, —— U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *In Re "Agent Orange" Product Liability Litigation*, 534 F.Supp. 1046 (E.D.N.Y. 1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). Perhaps the most widely followed statement of the elements of the defense is that announced by the district court for the Eastern District of New York in the *Agent Orange* litigation. The court held that in order for a defendant to successfully assert the defense it must prove: (1) that the government established specifications for the product; (2) that the product met the government specifications in all material respects; and (3) that the government knew as much or more than the defendant about the hazards that accompanied the use of the product. 534 F.Supp. 1046, 1055. Although most recent decisions refer to the defense as being available to "military" contractors,

"[t]he rationale behind the defense is an extension of sovereign immunity: in circumstances in which the government would not be liable, private contractors who act pursuant to government directives should not be liable." *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036 (5th Cir. 1984, *en banc* ), *cert. denied*, —— U.S. ——, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). Both the history of the defense and its general rationale lead us to the conclusion that it would be illogical to limit the availability of the defense solely to "military" contractors. If a contractor has acted in the sovereign's stead and can prove the elements of the defense, then he should not be denied the extension of sovereign immunity that is the government contract defense.

Burgess' central contention on appeal is that the district court erred in concluding that Alabama would apply the government contract defense against AEMLD claims. He relies most heavily on *Challoner v. Day & Zimmermann*, 512 F.2d 77 (5th Cir.), *rev'd on other grounds*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). *Challoner* was a strict liability suit against a Texas ammunition manufacturer. Applying Texas law the court distinguished the case from prior contract specification cases stating that "[a] strict liability case, unlike a negligence case, does not require that the defendant's act or omission be the cause of the defect." On that basis the court refused to apply the defense.

The district court considered carefully Burgess' *Challoner* argument, but rejected it as follows:

*Challoner* provides one analytical method for determining whether a government contract defense is valid: determine whether the cause of action is strict liability or negligence. Using this method, this court holds that Alabama recognizes the government contract defense for AEMLD claims. But Alabama is not bound to use the *Challoner* method; it may construct its tort law in any manner it chooses.... Despite the anomalous *Challoner* holding, the rule in the majority of jurisdictions is that the government contract defense is viable even in the strict liability realm. Alabama would,

especially given its limited movement toward strict liability, follow the majority rule.

The district court's reasoning is sound. Not only is AEMLD something less than a pure strict liability doctrine, *see Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976), but the overwhelming majority trend is to allow the government contract defense to defeat even strict liability claims. *See, e.g., Tillett v. J.I. Case Co.*, 756 F.2d 591 (7th Cir.1985); *Brocklesby v. United States*, 753 F.2d 794, 801 n. 10 (9th Cir.1985); *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir. 1982); *Bynum v. G.M. Corp.*, 599 F.Supp. 155 (N.D.Miss.1984). We are convinced, as was the district court, that the Alabama Supreme Court would apply the government contract defense against AEMLD claims.[1] Moreover, upon a review of the record we are convinced that Colorado Serum has proved adequately each element of the defense.

For the aforementioned reasons, we AFFIRM the judgment of the district court.

---

1. "In vicariously creating the law for a state, the federal court may look to such sources as the Restatements of Law, treatises and law review commentary, and 'the majority rule.' The federal court must keep in mind, however, that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes that the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." C. Wright, Law of Federal Courts 375 (4th ed. 1983). Our statement of Texas law in *Challoner*, therefore, should not constrict our duty to make the correct *Erie* choice for Alabama.