**Ralph C. ARNHOLD,**
**Plaintiff/Appellant,**

v.

**McDONNELL DOUGLAS**
**CORPORATION,**
**Defendant/Respondent.**

No. 74263.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 1999.

P. Dennis Barks, Hermann, for appellant.

Robert G. Lancaster, St. Louis, for respondents.

RHODES RUSSELL, Judge.

Ralph C. Arnhold ("landowner") appeals from the trial court's grant of summary judgment to McDonnell Douglas Corporation ("contractor") in an action for property damage to his property allegedly caused by contractor's conducting of supersonic aircraft test flights. The trial court found contractor was immune from liability by virtue of the government contractor defense. Landowner, however, argues: 1) the government contractor defense is inapplicable to the performance aspect of contractor's contract; and 2) contractor's motion for summary judgment did not present evidence sufficient to show material facts that were free from genuine dispute supporting the elements of the defense. We affirm.

## I. Factual Background

Landowner owns property in Gasconade County near Hermann which he uses for both business and residential purposes. In January 1997, he filed suit against contractor claiming that sonic booms from military aircraft owned by or under the control of contractor caused severe dam-

age to the structure of his building. Landowner alleged contractor's employees were negligent in operating aircraft at supersonic speeds and at unreasonably low altitudes in the vicinity of his property. He sought damages and injunctive relief.

Contractor moved for summary judgment asserting that under the government contractor defense, its contract with the United States Government for the production of military aircraft entitled it to an extension of governmental immunity from state law claims. Contractor filed several affidavits in support of its motion for summary judgment. Landowner did not file affidavits in opposition to contractor's motion. The trial court granted contractor's motion for summary judgment on all counts. Landowner now appeals.

## II. Applicability of the Government Contractor Defense

 Contractor's motion for summary judgment asserted it was entitled to immunity for the actions alleged in landowner's petition under the government contractor defense. In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504–07, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the United States Supreme Court held the government contractor defense was applicable to product liability claims asserted against manufacturers of military equipment.

Landowner does not dispute that contractor is a party to a military procurement contract who would be protected from product liability claims arising thereunder. Landowner, however, contends the defense does not apply to this claim for property damage based on contractor's negligence in operating the aircraft.

The Court in *Boyle* held that where (1) a "uniquely federal" interest is involved and (2) a significant conflict exists between an identifiable federal policy or interest and the operation of state law, then state law is preempted and replaced by federal law prescribed by the courts, "federal common law."

The *Boyle* opinion, in recognizing the government contractor defense, relied heavily on *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). *Boyle*, 487 U.S. at 506, 108 S.Ct. 2510.

In *Yearsley*, riparian landowners sued a construction company for property damages the company caused while constructing dikes pursuant to a contract with the United States government. The construction project was authorized by an act of Congress and supervised by federal officials. *Yearsley*, 309 U.S. at 20, 60 S.Ct. 413. The Court held the contractor could not be held liable for damages under state law, explaining that "if [the] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20–21, 60 S.Ct. 413. The *Boyle* Court concluded the federal interests in procurement contracts were essentially the same as the federal interest in the performance contract at issue in *Yearsley*.

Landowner now asks us to ignore *Boyle*'s rationale and origin, and to refuse to "extend" *Boyle* to apply to the performance aspect of contractor's procurement contract. We cannot, however, ignore that the government contractor defense was first invoked by private contractors seeking to avoid liability for damages arising out of the performance of public works projects. *See, e.g., Yearsley*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; *Myers v. United States*, 323 F.2d 580 (9th Cir.1963); *see generally, Burgess v. Colorado Serum Co., Inc.*, 772 F.2d 844, 846 (11th Cir.1985); Note, *The Government Contractor Defense: Should Manufacturer Discretion Preclude Its Availability*, 37 ME.L.REV. 187 (1985); Note, *The Government Contract Defense in Strict Liability Suits for Defective Design*, 48 U.CHI.L.REV. 1030 (1981).

While in recent years the defense has become "a favorite shield" of military pro-

curement contractors,[1] the rationale behind the defense is an extension of sovereign immunity. "[I]n circumstances in which the government would not be liable, private contractors who act pursuant to government directives should not be liable." *Burgess,* 772 F.2d at 846 (*quoting Hansen v. Johns–Manville Products Corp.,* 734 F.2d 1036 (5th Cir.1984, *en banc*), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985).

It would be illogical to limit the availability of the defense solely to product liability claims arising out of purely procurement aspects of government contracts. "If a contractor has acted in the sovereign's stead and can prove the elements of the defense, then he should not be denied the extension of sovereign immunity that is the government contractor defense." *Burgess,* 772 F.2d at 846. We conclude the property damage nature of landowner's claims and the performance nature of the contract does not prevent application of the government contractor defense.

### III. Preemption of State Law

■ The government contractor defense operates to preempt state law where (1) the field of activity involves a uniquely federal interest; and (2) a significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation. *Boyle,* 487 U.S. at 507, 108 S.Ct. 2510.

#### A. Uniquely Federal Interest

■ Although landowner's specific claim herein alleges negligence by contractor in the operation of aircraft, contractor was performing the flights involved herein pursuant to a contract involving the manufacture of and sales to the United States of military aircraft. The Supreme Court has

left no doubt that the procurement of equipment by the United States is an area of uniquely federal interest. *Id.* at 506–07, 108 S.Ct. 2510. Thus, contractor's activity involves a uniquely federal interest.

#### B. Significant Conflict

■ The Court's analysis in *Boyle* of whether applicable federal and state laws resulted in a significant conflict relied on the discretionary function exception of the Federal Tort Claims Act ("FTCA"). The FTCA authorizes damage suits against the United States for harm caused by the negligent or wrongful conduct of government employees, to the extent that a private person would be liable under state law. 28 U.S.C.A. section 3–146(b) (1993). The FTCA, however, expressly retained the government's immunity from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C.A. section 2680(a) (1994).

In *Boyle,* the court reasoned that the discretionary function exception of the FTCA suggests the outlines of a significant conflict between federal interests and state law in the procurement context which would justify displacement of state law. 487 U.S. at 511, 108 S.Ct. 2510.

■ "After *Boyle,* the discretionary function exception to the FTCA indicates the scope of the government contractor defense." *Carley v. Wheeled Coach,* 991 F.2d 1117, 1122 (3rd Cir.1993).

We, therefore, must consider whether the government performs a discretionary function when, with knowledge of safety risks, it determines flight testing of military aircraft is necessary and establishes procedures therefor.

**1.** *Burgess,* 772 F.2d at 846; *see, e.g., Emory v. McDonnell Douglas Corporation,* 148 F.3d 347 (4th Cir.1998); *Gray v. Lockheed Aeronautical Systems Co.,* 125 F.3d 1371 (11th Cir.1997); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992 (7th Cir.1996); *Tate v. Boeing Helicopters,* 55 F.3d 1150 (6th Cir.1995).

In *Dalehite v. United States,* 346 U.S. 15, 37–42, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court held the government performed a discretionary function under the FTCA when it planned a fertilizer shipment program, determined the ingredients of the fertilizer, and determined the methods for its coating, storing, and shipping. The Court stated the discretionary function exception "includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Id.* at 35–36, 73 S.Ct. 956. The Fifth Circuit Court of Appeals more recently clarified this saying, "both the evaluation of actual or suspected hazards, and the decision to proceed in a particular manner in light of those hazards, are protected discretionary acts, not subject to tort claims in the district court." *Ford v. American Motors Corp.,* 770 F.2d 465, 467 (5th Cir.1985).

We believe the government performed a discretionary function when it required testing of a product and established procedures therefor with an awareness of the dangers. Landowner's point one, arguing the government contractor defense is inapplicable to his cause of action, is denied.

### IV. Contractor's Motion for Summary Judgment

■ Landowner's second point on appeal asserts contractor's motion for summary judgment did not present evidence sufficient to show material facts that were free from genuine dispute supporting the elements of the government contractor defense.

A defending party may establish a right to summary judgment by showing: 1) facts that negate any one of the facts necessary to support the elements of claimant's cause of action; 2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or 3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 381 (Mo. banc 1993). Regardless of which of these three means is employed, each establishes a right to judgment as a matter of law. *Id.*

■ We must apply the government contractor defense to determine whether contractor has shown the government's use of discretion with regard to its test flights and the attendant substantial conflict between federal and state law required to establish contractor's right to immunity from tort liability. The defendant bears the burden of proving each element of the defense. *Rodgers v. Czamanske,* 862 S.W.2d 453, 459 (Mo.App. 1993).

### A. Formulation of Government Contractor Defense for Performance Contracts

The Court in *Boyle* announced a three-prong test for determining when a significant conflict exists between federal and state law such that state tort law is displaced by federal common law in a suit against a military contractor:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* at 512, 108 S.Ct. 2510.

The Court developed the three-prong test in *Boyle* to determine when state law imposing liability for design defects in military equipment poses a significant conflict with federal interests. Landowner's petition does not assert product liability claims

based on defects in the aircraft, but asserts negligence by contractor in the performance of supersonic flights. The portions of the *Boyle* test which depend on product liability claims, therefore, are inappropriate for determining whether liability can be imposed to the negligent performance claims herein.

*Boyle* does not, however, leave us entirely without guidance. The Court explained the purpose of the elements saying:

> The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated—*i.e.,* they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

Contractor argues it produced evidence in support of its motion for summary judgment supporting the elements of a modified *Boyle* test by showing that: (1) the United States approved precise documented procedures for contractor's supersonic test flights; (2) the test flights were flown by contractor's pilots in strict conformance with those procedures; and (3) the United States had full knowledge of the potential adverse consequences of supersonic flights.

Landowner asserts contractor's "analogy between the *Boyle* criteria for defective products manufactured according to government specifications on the one hand and the operational standards imposed by the government and the customary compliance with those standards by the contractors's [sic] agents on the other" is inappropriate. We do not agree as the defense can apply to performance contracts. Contractor's interpretation of the *Boyle* criteria and application of those criteria to the present facts is reasonable. The contractor, however, must produce evidence to support those elements to meet its initial burden of proof.

### B. Contractor's Evidence

In support of its motion for summary judgment, contractor attached its contract with the United States for the production, testing, and purchase of F–15 aircraft; affidavits of several of its employees; Department of Defense Manual 8210.1 entitled Contractor's Flight and Ground Operations Manual ("Manual"); contractor's Report No. 9271 outlining its flight operations procedures ("Report"); contractor's Directive No. F001.3 describing its flight scheduling and management process ("Directive"); and other documents.

### 1. Government Approval of Precise Procedures

To meet the first *Boyle* prong, contractor must show the existence of two factors: reasonably precise flight procedures and government approval of them. *See Gray v. Lockheed Aeronautical Systems Co.,* 125 F.3d 1371, 1377 (11th Cir.1997).

Contractor presented its contract with the United States government under which it was directed to perform acceptance test flights of F–15 and F–18 aircraft and to prepare flight plans for the conduct of these flights. The contract required contractor to prepare and provide to the government detailed acceptance test procedures ("ATP"). Contractor presented affidavits of its employees stating the ATP are reviewed and approved by the government. The contract also instructed that contractor's flight test activities are governed by the Manual, the Report, and the Directive.

The Manual provided for a Government Flight Representative ("GFR") who had responsibility for approval of flights, procedures, and crew, and for ensuring contractor's compliance with the Manual. The Manual required contractor to obtain GFR approval for all flights; including

crew members and flight area, route, or course.

Contractor also produced a Letter of Agreement between it and Federal Aviation Administration representatives at Kansas City's and St. Louis's air traffic control centers ("Letter"). The Letter outlined the procedures contractor must use when operating flights on random routes. Under the Letter, contractor was required, prior to departure, to file flight plans with the appropriate air traffic controller.

The ATP, the Directive, and the Report all provide detailed procedures for contractor's test flights from preflight checks through shutdown. Under these provisions, all supersonic flights of F–15 and F–18 aircraft were to be flown to approximately Mach 2.0 and an indicated air speed of 700 knots at an altitude greater than 30,000 feet. The ATP delineated specific tasks which contractor's pilots must accomplish.

We find contractor presented sufficient evidence of precise specifications and government approval thereof.

### 2. Contractor's Conformance to Procedures

█ To demonstrate the second *Boyle* condition, contractor must show the procedures it actually employed conformed to those specifications. A contractor may show conformity through evidence that the government was present and actively involved throughout the process. *Gray,* 125 F.3d at 1378. Where the procurement process involves a continuous exchange between the contractor and the government, the process becomes persuasive evidence of the contractor's conformity to precise specifications. *Id.*

Contractor produced evidence of the United States' involvement in every stage of flight test planning. The contract required governmental review and approval of the ATP. The Manual established the GFR to personally supervise contractor

and ensure compliance with the contract and ATP. The Letter demonstrated supervision by the FAA with regard to submission and approval of flight plans.

In addition to this evidence of government involvement in the test flight process, contractor presented affidavits of several of its employees providing that all test flights were flown in strict compliance with the procedures set out in the ATP and the Manual.

We conclude contractor presented sufficient evidence of its compliance with precise government specifications.

### 3. Government's Knowledge of Adverse Consequences

*Boyle*'s third prong of the government contractor defense requires that contractor warn the United States about the dangers in the flight procedures that were known to contractor but not to the United States. *Gray,* 125 F.3d at 1379.

Contractor presented U.S. Air Force Fact Sheet 96–03 regarding sonic booms. The Fact Sheet described sonic booms, their origin, their characteristics, and the common effects of their impact. It also outlined the government's knowledge of sonic booms, and specifically provided that the Air Force is involved in continuing research to determine the impact on the environment of sonic booms. Contractor also presented the affidavit of one of its employees, an engineer whose specialty was aerospace vibration and acoustics. The engineer stated the information contained in the fact sheet was consistent with his knowledge of sonic booms as well as information contained in reported studies and other recognized resources on the subject.

We believe contractor presented sufficient evidence that the government was as aware of potential adverse effects from supersonic flights as contractor. Contractor has made a sufficient prima facie showing of a right to summary judgment based on the government contractor defense.

### C. Landowner's Burden to Contradict Contractor's Motion

 When the movant has made the prima facie showing required by Rule 74.04(c), the burden shifts to the non-movant to respond, by affidavits or as otherwise provided in Rule 74.04, setting forth specific facts showing there is a genuine issue for trial. *ITT*, 854 S.W.2d at 381. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *Id.*

Landowner presented no evidence in response to contractor's motion for summary judgment. Therefore, landowner has failed to carry his burden to show a genuine dispute as to a material fact. Point two is denied.

The trial court did not err in entering summary judgment in favor of contractor. The judgment is affirmed.

MARY K. HOFF, P.J., and GARY M. GAERTNER, J., concur.